ISAAC D. MAIL, County Collector,

*v.*

GEORGE H. MAXWELL *et al.*

*Filed at Mt. Vernon November 16, 1883.*

1. JUDGMENT OR DECREE—*how far conclusive upon the rights of persons not parties.* A decree of the circuit court, on bill filed by certain taxpayers against the county collector, enjoining the collection of taxes levied on the complainant's property, for interest on corporate bonds issued by a town to a railroad company, on the ground that such bonds are void, is conclusive on the parties thereto that the bonds are void, and that no tax to

pay interest thereon can be lawfully collected from such tax-payers, and such decree is a complete defence to an application by the collector for judgment against such tax-payers' lands for such taxes. But bondholders not made parties to the bill are not concluded by such decree.

2. And where a non-resident creditor, after having obtained judgment against a town for interest claimed to be due on its bonds previously issued, in the United States Circuit Court, presented his petition to that court for a *mandamus* against the county collector of the county in which the town was situated, under which the writ was awarded and issued: *Held,* that the town and tax-payers thereof not being parties to that proceeding, were not concluded by the judgment awarding the writ.

3. Same—*rights and remedy of persons not parties to a proceeding, but whose rights are affected by the decree therein.* Where a decree is rendered enjoining the collection of taxes to pay interest accruing on municipal bonds, the bondholders not being made parties, such decree is not conclusive against a bondholder, or *res judicata* as to him; but it does not follow that such party may ignore such decree, and require the collector to collect the tax in violation of the injunction. If the bondholder in such case can show that the bonds are valid, he may file a bill of review, making the parties to the former proceeding all parties defendant, challenging that decree upon the ground that he was not a party thereto, and have the question of the validity of the bonds adjudged *de novo.*

4. Conflict of jurisdiction—*interference as between different jurisdictions.* Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference.

Appeal from the County Court of Crawford county; the Hon. Franklin Robb, Judge, presiding.

On January 8, 1876, bonds, purporting to be the bonds of the town of Honey Creek, in Crawford county, Illinois, were issued to the Paris and Danville Railroad Company, to the amount of $15,000, payable, on their face, at a future day, with interest from October 11, 1875, at the rate of ten per cent per annum, payable annually on January 1 of each year, with interest coupons attached. These bonds were duly registered in the office of the Auditor of Public Accounts. At the March term, 1881, in the circuit court of Crawford county, in a suit in which Maxwell and other tax-payers and

residents of the town of Honey Creek were complainants, and in which the county treasurer and collector of Crawford county and the town collector of the town of Honey Creek were defendants, a decree was entered, in obedience to the mandate of the Appellate Court for the Fourth District, by which the bonds in question were adjudged void, and a perpetual injunction ordered enjoining the county collector and the town collector, and their successors in office, among other things, from collecting from complainants, or either of them, any taxes levied upon the real estate of either of them, for the payment of interest upon any of the bonds mentioned. None of the bondholders seem to have been made parties to this proceeding.

On March 4, 1882, one Preston, a citizen of Louisiana, recovered a judgment against the town of Honey Creek, in the Circuit Court of the United States for the Southern District of Illinois, (in which Crawford county lies,) upon certain coupons of these bonds, for the sum of $1276.36, and on April 19, 1882, presented to that court a petition for a *mandamus* against the county collector of Crawford county. This petition was answered by the collector, and on demurrer to the answer by the petitioner, the court held the answer insufficient, on May 1, 1882, and ordered the writ to issue, and on May 3, 1882, a writ of *mandamus* was issued, under the seal of that court, reciting the filing of the petition, answer and demurrer, and the judgment of the court, and in obedience to that recited judgment commanding the county collector forthwith to proceed, as required by the statutes of Illinois, to collect all taxes assessed, levied and extended within and for the town of Honey Creek, now due and unpaid, against the owners of real estate and personal property therein, for the payment of interest due and to accrue on the bonds in question, for the year 1881 and prior years, appearing upon his tax warrant, "as well all such taxes returned as enjoined tax, as all such taxes as have been

returned as delinquent, and to that end" to levy the same by distress and sale of personal property, etc., and that he "do, without delay, include in the advertisement now being made by him as such collector, giving notice of the intended application for judgment for sale of such said delinquent lands and lots so returned to him by the town collector of the town of Honey Creek, all the lands and lots against which any of said bond interest tax * * * now stands assessed and due," and after having so advertised, etc., that he do include in his application for judgment and order of sale for taxes on delinquent lands and lots, at the approaching term of the county court of his county, and obtain judgment; and after he shall so obtain judgment as aforesaid, he shall proceed to sell, etc., until such taxes shall have been collected and returned to the authorities in the statutes provided. These lands were embraced in the delinquent list for 1881, and were advertised as chargeable with taxes for the payment of interest on railroad bonds, in two columns of figures,—one column headed "Enjoined Tax," and the other "T. R. R. Tax." The figures in the first column were intended to represent back taxes of prior years, and the figures in the second column intended to represent the tax for the year 1881, against the several tracts. The amounts in each column were for the payment of interest upon these railroad bonds.

The delinquent list, in that condition, was brought before the county court by the collector in the usual mode, and he asked for judgment against the lands, etc., for the payment of these taxes, which application was resisted by Maxwell and other land owners who were parties to the decree in the State court. The county court, after hearing evidence, refused to render judgment in that regard against the lands, and from this judgment of the county court the county collector appeals to this court, and insists that the county court erred in refusing to render judgment charging these lands

with this railroad tax. On the hearing in the county court it was proven that Preston's judgment had been paid in full. Other facts are stated in the opinion of the court.

Messrs. CALLAHAN & JONES, for the appellant:

The mandate of the Circuit Court of the United States is not affected by an injunction of the State courts. High on Extraordinary Legal Remedies, p. 287, sec. 398.

The question of the validity of the bonds having been settled in the Federal court, can not be inquired into here. Ibid. p. 268, sec. 280; p. 283, sec. 396.

It is not necessary to obtain judgment before collecting money to pay the interest. Ibid. sec. 384.

Messrs. MAXWELL & ALLEN, and Messrs. PARKER & CROWLEY, for the appellees:

The bonds have been adjudged void for non-compliance with the conditions of the vote of the people. *Parker et al.* v. *Smith et al.* 3 Bradw. 356.

The county court should not order appellant to do the very thing he was enjoined by another court from doing. He should have seen that the injunction was dissolved before making his application for judgment.

Where a court of competent jurisdiction enjoins the collection of a tax, the matter should remain at rest until the injunction is dissolved in due form of law.

An excess of taxation is illegal and void. *Ramsey* v. *Hœger*, 76 Ill. 432; *Thatcher* v. *People ex rel.* 93 id. 243; *Mix* v. *People*, 72 id. 241.

In this case there is an apparent conflict of authority between the State and Federal courts,—the one enjoining a certain thing not to be done, the other ordering it to be done. If this be true, then the rule, as we understand it, is, that the court that first obtained jurisdiction of the matter will retain it. Under this rule, the State court having obtained

jurisdiction of the case in 1879, and the Federal court in 1881, the former must retain control, and hence the injunction must be obeyed until dissolved by a court in review. The authority (High on Extraordinary Legal Remedies, sec. 395, page 281,) cited by counsel for appellant, is in point against appellant, as there the Federal court had jurisdiction first, and the State court, by injunction, interfered. See *Mayne* v. *Lowe*, 9 Wall. 409,—being the case cited by High in support of the position taken in said section 395.

A judgment against a township is a town charge, and should be audited by the town auditing board, and town tax extended to pay the same, and if the auditors refuse to audit judgment, then they may be compelled to do so by *mandamus*. *Town of Lynn* v. *Cooledge et al.* 89 Ill. 529.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The bondholders were not parties to the proceedings in the circuit court of Crawford county, and of course are not concluded by that decree. The tax-payers and the county collector, however, were parties, and as between them that decree is conclusive that the bonds are void, and that no tax to pay interest thereon can be lawfully collected from these tax-payers. There are no other parties before the county court in the case at bar, and it was not error in the county court to hold, that as between the complainants in that chancery suit in the circuit court and the defendant in that suit, that decree, whether erroneous or not, not having been set aside, was absolutely conclusive.

It is, however, strenuously contended that the writ of *mandamus* out of the Federal court should have prevailed as against the decree of the circuit court of Crawford county. The record in that *mandamus* proceeding was not produced. All we know of its contents we learn from the recitals in the writ of *mandamus*. We are not informed in any way what

were the allegations of the petition or the statements of the answer to the petition, which were held insufficient in the Federal court. It is not shown what interest Preston sought to enforce by this *mandamus*,—whether he claimed as a judgment creditor, or merely as a bondholder, or otherwise. The judgment is not mentioned in the writ, and the scope of the writ covers the entire tax; and it does not appear that the injunction decree in the State court was at all brought to the attention of the Federal court. Hence we can not assume, what counsel for appellant seem to assume, that the Federal court, with a full knowledge of the existing injunction by the State court, ordered the collector, by this *mandamus*, to disobey that injunction. In the absence of clear proof this court can not assume that under such a state of case any Federal court would so order.

It is said the bondholders were not parties to the proceedings and decree in the State court, and therefore are not bound thereby. On the other hand, neither the town of Honey Creek nor the tax-payers were parties to the proceedings for *mandamus* in the Federal court, and by the same reasoning they are not bound thereby. The collector was a party in both cases, and may have violated some provisions of the injunction of the State court by attempting to procure a judgment for the sale of the lands for these taxes; but it is not perceived how he can be adjudged at fault in not obeying the *mandamus*, having used his best endeavors to obey it. It is not his fault that the county court refused to render judgment as asked. The *mandamus* does not contain any command to the county court to enter judgment for these taxes against these lands, and no court in this country would order a writ containing such a command.

Counsel seem to suppose that there is here shown a conflict of jurisdiction between the State and Federal courts, and a conflict of judgments on the same matter, and insist that where the interests of non-residents are involved, the

authority of the Federal courts must prevail in defiance of the decrees of the State courts.    Fortunately this is not so. The exercise of sound discretion by the respective courts in our complicated system of government, and the observance by them of a few simple and just rules, has been such that no serious difficulty has been encountered from such cause. Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference.

Recurring to the facts shown in this record, it would have been erroneous and irregular, in the circuit court of Crawford county, to proceed to a final decree adjudging these bonds void, without having the bondholders before the court, unless, indeed, they were unknown, or for some other cause could not be brought in.    Under such circumstances a court of chancery may proceed to decree that which, if performed, may affect the interest of the absent party so interested. Such, no doubt, was the case acted upon by the State court. Such a decree is not conclusive as against such absent party.    It can not be set up against him as *res judicata*.    It does not follow, however, that such absent party may ignore such decree, and proceed as though it had not been rendered. In the case at bar, the county collector having been forbidden by the decree of the State court to collect taxes to pay interest on these bonds, the bondholder can not lawfully ask, as against the collector, an order that he shall disobey this injunction, until he, (the bondholder,) by some appropriate proceeding, has caused such decree to be opened and set aside.    This may be accomplished, if that decree does injustice to the bondholder, perhaps, in more ways than one; but plainly, if the bondholder can show that these bonds are valid, he may file a bill in the nature of a bill of review, making the parties to the former proceedings

36—107 ILL.

all parties defendant, challenging that decree upon the ground that he was not a party thereto, and under such a bill he would clearly have the right to have the question of the validity of those bonds heard and adjudged *de novo.*

In an application for a writ of *mandamus* it is always a matter in the discretion of the court to determine whether the same shall or shall not be issued, and does not necessarily issue in all cases where the petitioner shows a legal right to what is sought by the writ. We are not informed in this case that either the petition for *mandamus* or the answer to that petition set out the adjudication of the State court. We can not believe that matter was shown to that court, otherwise no writ would have been ordered until that decree was opened and set aside, thus placing the collector in a position where he might obey the writ without disobeying an existing valid injunction. Be this as it may, it is sufficient, in this case, to say that the mere production of the writ of *mandamus,* without a transcript of the record in the Federal court, is not proof that the Federal court, in ordering the writ, adjudged these bonds to be valid. Such writ may guide the conduct of the collector, but can have no bearing upon the action of the court in determining whether judgment should be entered against these lands for the amount of these taxes. The judgment in the Federal court having been paid, could not be considered in the decision in this case.

We think the judgment of the county court, in view of the proofs, was right, and it is therefore affirmed.

*Judgment affirmed.*