## THE CITY OF CHICAGO ET AL.

### V.

### DWIGHT F. CAMERON AND ALBERT W. COBB.

*Bill to have Bonds Issued by a Corporation Declared Ultra Vires, and to Secure Release of Trust Deed—Want of Consideration—Equity Jurisdiction—Adequate Remedy at Law—Waiver of Objection—Parties—When Stockholder May Commence Action—Objection, How Raised—Former Adjudication—Res Adjudicata—Service on Non-Resident Defendants.*

1. A bill in equity lies to procure the release of a trust deed where the matters rendering it void must be established by extrinsic evidence.

2. Where a defendant in chancery has by answering submitted to the jurisdiction of the court, it is too late to object that the complainant had an adequate remedy at law.

3. Wherever a cause of action exists primarily in behalf of the corporation against directors, officers and others, for wrongfully dealing with corporate property, or a wrongful exercise of corporate franchises, so that the remedy should regularly be obtained through a suit by and in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrongdoing directors, officers and other persons.

4. The fact that the complainant became a stockholder after the completion of the acts complained of, does not affect his right to commence the action which is maintained directly for the benefit of the corporation.

5. The question of the capacity of the complainant to maintain the action can not be raised after a hearing on the merits. It must be raised by demurrer or plea in the nature of a plea in abatement.

6. To render a matter *res adjudicata* there must be identity in the thing sued for, identity in the cause of action and identity of persons and of

parties. A question not raised by the pleadings in the former action, upon which no issue was tendered, in reference to which no evidence was adduced, and upon which the court did not pass, can not be considered *res adjudicata*.

7. Upon a bill filed to have certain bonds issued by a corporation declared *ultra vires* and void, and to secure the release of a trust deed securing said bonds, it is *held:* That the decree for complainants is supported by the findings; that the present holders took them with knowledge of the facts constituting the fraud, want of consideration, and *ultra vires;* and that the defendants who appeared can not question the sufficiency of the service on non-resident holders of bonds who did not appear.

[Opinion filed December 11, 1886.]

IN ERROR to the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Statement by WELCH, J. The La Salle and Chicago Railroad Company was organized under an act entitled "An Act to incorporate the La Salle and Chicago Railroad Company," approved February 28, 1867, for the construction of a railroad from La Salle to Chicago. In 1872 the name of the corporation was by a vote of its stockholders changed to the Chicago and Great Western Railroad Company. On the first of March, 1873, the directors of the company by resolution authorized the issue of bonds to the aggregate amount of $8,000,000, the same to be used or sold, and the proceeds thereof to aid in the construction and equipment of the railroad of said company upon the route selected and to be selected therefor, and within the limits prescribed by its charter. One thousand of these bonds, amounting to $1,000,000, were issued, dated March 1, 1873, and secured by a deed of trust of the same date, conveying to the Farmers' Loan and Trust Company, of New York, all the property and franchises of the company.

Prior to this time a corporation, known as the Riverside Improvement Company, organized under an act approved March 11, 1869, for the purpose of purchasing, improving and selling suburban property in the vicinity of Chicago, had become largely indebted for the purchase and improvement of certain lands at Riverside, in Cook County. Another corporation

City of Chicago et al. v. Cameron.

known as the Riverside Water and Gas Company, incorporated April 6, 1869, for the purpose of supplying gas and water to the town of Riverside, had also become largely indebted and embarrassed in its enterprises at that place.

Emery P. Childs, who was the president of the Riverside Improvement Company, and one of the largest stockholders and vice-president and general manager of the Riverside Water and Gas Company and one of its heaviest stockholders, acquired the control of another corporation known as the Mercantile Warehouse and Loan Company, and caused its name to be changed to the Chicago and Great Western Railroad Land Company. He then caused the Riverside Improvement Company and the Riverside Water and Gas Company to convey their property to the land company, subject to a large amount of mortgage and other indebtedness. Childs then became the president and general manager of the land company. He also owned a majority of the capital stock of the Chicago and Great Western Railroad Company, and was its president and manager. Instead of using the bonds of the railroad company for the purpose of constructing its road, as required by the resolution of the board of directors, Childs without authority used seven hundred and fifty of its bonds in payment and satisfaction of the debts of the improvement company, of the water and gas company and of the land company. All of the persons receiving the bonds knowing that the only consideration therefor was the indebtedness of the three companies last named, and that the bonds were wholly void as against the railroad company. Childs also delivered two hundred and fifty of the bonds to Joshua C. Sanders and other persons without any consideration accruing to the railroad company, of which the parties receiving them had full knowledge. On the first day of March, 1873, the land company executed its deed of trust conveying certain lands in Riverside, Cook county, to John J. Jewett, as trustee, to secure the railroad bonds above described. Default having been made in the payment of interest on the bonds, suit was brought in the Circuit Court of Cook County in 1875, by F. W. Peck and others, holders of the bonds, for the foreclosure of the Jewett trust deed. A decree of foreclosure was rendered which was modified by the

Supreme Court. See Peck v. Chicago and Great Western Railroad Land Company, 112 Ill. 408.

On the 14th of October, 1884, complainants became subscribers to the capital stock of the railroad company with a view of obtaining further subscriptions and of constructing the road. Learning that the bonds and trust deed were still outstanding, and an apparent cloud upon the title of the railroad company, they applied to the Farmers' Loan and Trust Company to release the deed of trust. The company declined to execute a release without an order of court declaring the bonds void, and directing it to release the trust deed. The railroad company, Childs being still its president, refused upon the application of complainants to institute the necessary proceedings to obtain such a decree. Complainants thereupon filed this bill, November 27, 1884, in the Circuit Court of La Salle County, against the holders of the bonds, including the plaintiffs in error, the Farmers' Loan and Trust Company and the railroad company. The bill alleged the facts as stated *supra*, and prayed that the bonds be declared *ultra vires* and void, and that the Farmers' Loan and Trust Company be required to execute a release of the trust deed. Plaintiffs in error answered the bill upon the merits, and neither they nor any of the defendants to the bill raised any question, either by demurrer, plea or otherwise as to the capacity in which complainants brought suit as stockholders in the corporation. Upon final hearing upon the pleadings and proofs, the court found the facts as above recited and granted the relief as prayed for in the bill of complainants, from which decree this writ of error is prosecuted.

Mr. GEORGE W. SMITH, for plaintiffs in error.

There was a sufficient consideration for the bonds. They were delivered in satisfaction of certain debts of other companies. The company was the judge as to whether or not this would operate for its benefit. Its answer shows that it expected to be benefited.

The finding that the bonds were not used in the construction, equipment or operation of the railroad does not establish a want of consideration. P. & S. R. R. Co. v. Thomas, 103 Ill. 187.

City of Chicago et al. v. Cameron.

The Circuit Court of Cook County, in a cause to which the railroad company was a party, had determined the bonds to be valid and lawfully outstanding. This was sufficient to oust the jurisdiction. Wells on Jurisdiction, Secs. 156–159 ; Whitney v. Stevens, 97 Ill. 482 ; Mail v. Maxwell, 107 Ill. 554; C. & Gt. W. R. R. Co. v. Peck, 112 Ill. 408.

As a decree against non-residents, brought in by publication, it was inoperative and therefore improper. Pennoyer v. Neff, 95 U. S. 714 ; St. Clair v. Cox, 106 U. S. 350; Pana v. Bowler, 107 U. S. 529.

The bill did not allege a case of equitable cognizance. It was not a bill to restrain the issue of bonds nor to compel officers or directors to reimburse the railroad company. It was not a bill in the interest of or by the corporation to compel the restoration of assets which had been sequestered or squandered.

It was a bill directed against bondholders which the corporation did not approve, but to which it submitted. It sought to wrest from them their property. It was without precedent, and destitute of principle. Morawetz on Corporations, Sec. 383, *et seq.;* 3 Pomeroy Eq. Jur., Sec. 1088. *et seq.;* Gray v. Lewis, L. R. 8, Ch. App. 1035; Russell v. Wakefield, L. R. 20, Eq. 479 ; Hawes v. Oakland, 104 U. S. 450 ; Detroit v. Deane, 106 U. S. 537 ; Brown v. Boston Theatre, 104 Mass. 378.

Defendants in error purchased stock eleven years after the bonds were issued. They desired to obtain further subscriptions. How much they paid, what amount of stock they held, what proportion it bore to the whole issued, they do not disclose.

They did not apply to the directors to file a bill, nor did they call a meeting of stockholders. If stockholders had met it is to be presumed that the defendants in error would have been out-voted and the bill would not have been authorized.

Messrs. J. L. HIGH, E F. BULL and D. S. WEGG, for defendants in error.

Equity has jurisdiction at the suit of a single stockholder to prevent the misapplication of the funds or credit of a corpora-

tion by its officers or agents, and to afford relief if such fraudulent misappropriation has already been consummated. 3 Pomeroy's Equity, 10; Wood's Railway Law, Sec. 63; Robinson v. Smith, 3 Paige, 222; Dodge v. Woolsey, 18 How. 241; Colman v. Eastern Counties R. Co., 10 Beav. 1; Salomons v. Laing, 12 Beav. 377; Hazard v. Durant, 11 R. I. 195; March v. Eastern R. R. Co., 40 N. H. 548; Bliss v. Anderson, 31 Ala. 613.

Independent of the jurisdiction upon the ground above suggested for the prevention of a fraud upon the rights of stockholders, the court had jurisdiction to release the trust deed as a cloud upon the title of the railroad company. Revised Statutes, Chap. 22, Sec. 50.

And the court having acquired jurisdiction for that purpose, it may properly retain jurisdiction, and afford complete relief between the parties, by decreeing the bonds to be void as against the railroad company, although such defense might have been interposed by the company in an action at law upon the bonds. Pool v. Docker, 92 Ill. 501.

Even if a complete remedy could be had at law, the objection should have been taken in limine, and is waived by answering to the merits. Darby v. Dixon, 4 Ill. App. 187; Chicago Theological Seminary v. Gage, 103 Ill. 175; Whittington v. Ross, 8 Ill. App. 234.

Defendants in error are not entitled to the presumption of bona fide ownership of the bonds by reason of their possession, since the court finds by the decree that the bonds were illegally and fraudulently delivered in the first instance, without consideration, and in payment of the indebtedness of other corporations. The decree also finds that the parties receiving the bonds, and the present holders, including plaintiffs in error, received them with full knowledge of these facts; and in the absence of any proof that plaintiffs in error paid value for their bonds, no presumption can be indulged in their behalf, the court having expressly found that they received their bonds with full notice of their illegality and want of consideration. Smith v. Sac County, 11 Wall. 139, and authorities cited.

City of Chicago et al. v. Cameron.

The case of Peck v. The Chicago and Great Western Railroad Land Company, 112 Ill. 408, is not *res judicata* upon the issues presented in this action. To entitle a former judgment to be pleaded as *res judicata* in bar of a subsequent action there must be an absolute identity of the subject-matter, of the parties, of the cause of action and of the purpose or object sought. The subject-matter of the prior action was the indebtedness of the improvement company, the water and gas company and the land company; the cause of action was the deed of trust executed by the land company to Jewett ; the purport or object of the action was the enforcement of that deed of trust by a decree of foreclosure. Neither the subject-matter, the cause of action, nor the purpose sought in that litigation were identical with the subject-matter, the cause of action or the purpose sought in the case at bar. Freeman on Judgments, Sec. 252; Bigelow on Estoppel, 22 ; Aspden v. Nixon, 4 How. 467; Miller v. McManis, 57 Ill. 126; Hanna v. Reed, 102 Ill. 596 ; Packet Co. v. Sickles, 24 How. 333; Packet Co. v. Sickles, 5 Wall. 580; Cleaton v. Chambliss, 6 Rand. 86.

The right of action of a stockholder to obtain relief against a fraudulent misappropriation by the officer of the corporation of its funds or securities, is not affected by. the fact that he purchased his stock after the commission of the fraud which he seeks to redress. Young v. Drake, 8 Hun, 61 ; Ramsey v. Erie R. R. Co., 8 Ab. Pr. N. S. 174; S. C. Sub. Nom. Ramsey v. Gould, 57 Barb. 398.

Plaintiffs in error can not be heard to complain as to the effect of the decree upon non-resident bondholders served by publication. Having answered upon the merits they can only be heard as to such errors as are personal to themselves. Welch v. Post, 99 Ill. 471 ; Town of Virden v. Needles, 98 Ill. 366 ; Henrickson v. Van Winkle, 21 Ill. 274; Horner v. Zimmerman, 45 Ill. 14; Short v. Raub, 81 Ill. 509.

Welch, J. The first question presented for our consideration by the assignment of errors is, that " The court erred in not finding that there was an adequate remedy at law, and in not dismissing the bill for want of jurisdiction."

City of Chicago et al. v. Cameron.

The instruments sought to be canceled and released by the bill in this case were regular upon their face, and their invalidity depended solely upon extrinsic evidence. In such a case, as said by McAllister, J., in Field v. Herrick, 5 Ill. App. 54, "Although the question whether equity would take jurisdiction to decree the delivering up of written instruments void upon their face was at one time involved in considerable doubt, yet so far as an investigation has extended, none of the courts that doubted or denied it in the case just stated, ever expressed any doubt of it in a case where the ground upon which it was based was required to be established by extrinsic evidence." In such a case, as we understand the decisions, it has been universally conceded. Peirsoll v. Elliott, 6 Pet. 98; Hamilton v. Cummings, 1 Johns. Ch. 517. In the last case Chancellor Kent says: "I am inclined to think that the weight of authority and the reason of the thing are equally in favor of the jurisdiction of the court whether the instrument is or is not void at law, or whether it be void for matters appearing on its face, or from proof taken in the cause that these assumed distinctions are not well founded." Even conceding that there was an adequate remedy at law, the objection comes too late. This court by Pillsbury, P. J., in Ill. App. 187, Darby v. Dixon, said: "It is insisted that the plaintiff in error had an adequate remedy at law and he can not therefore maintain this bill. * *· * If defendant in error desires to rely upon this point he should have abided by his demurrer to the bill and not answered over to the merits." In Stout et al. v. Cook, 41 Ill. 447, it is said that "If a defendant in chancery answers and submits to the jurisdiction of the court it is too late for him to object that the complainant had an adequate remedy at law." So in Magee v. Magee, 51 Ill. 503, the court say: "The objection should have been interposed before the answer was filed and comes too late on error, although the remedy may have been complete at law." Chicago Theological Seminary v. Gage, 103 Ill. 175, announces the same rule.

The plaintiffs in error filed their answer in this case and submitted their cause upon its merits. It is now too late for

them to object that the defendant in error had an adequate remedy at law.

It is also insisted by counsel for plaintiffs in error that if any party could have maintained a bill of this nature it was the corporation. No other could be complainant. In support of this view we are referred to Morawetz on Private Corporations, Sec. 383: "It is a general rule founded on convenience that in case a trustee represents numerous beneficiaries, no portion of these beneficiaries can apply to a court of equity for the protection of the trust until the trustee has refused or neglected to take the necessary steps to protect it on their behalf. This rule applies with much force to the trust between a corporation and its stockholders." It may therefore be stated as a rule, " that the redress for an injury to a corporation should be obtained by the corporation itself through its regularly appointed agents, and it is only when the corporation is disabled from proceeding on its own behalf by reason of the misconduct or failure of its agents, that the stockholders may themselves proceed in chancery for the protection of their equitable rights." Sec. 384: "A court of equity can not interfere with the management of a corporation unless it be alleged and proven that no agent of the corporation having the requisite authority is willing and able to act on its own behalf. * * * And even where the directors or ordinary managing officers of a corporation are at fault it does not necessarily follow that the corporation is disabled from procuring justice for itself. For the majority of stockholders in corporate meetings have supreme authority under the charter to manage the corporate affairs, and whenever it is possible to obtain justice to the corporation by calling a stockholders' meeting and removing the offending officers and selecting new ones, this remedy must be pursued." Sec. 385: "If the governing agents of a corporation are able to act on its own behalf, a stockholder can not obtain relief in equity until he has shown that they are unwilling to act. * * * Hence it is ordinarily necessary before a court of equity can interfere with the management of a corporation at the suit of a stockholder to show that the directors or managing officers having

control of the corporation have refused to act on its behalf."
Sec. 386 : "But a demand upon the proper agents of a cor-
poration and their refusal to act are material only because
they show that the corporation itself is unable to protect the
rights of his members, for a corporation has no means of
acting except by its agents. *  *  *  Thus if the agents of
a corporation in whom the authority to direct its legislation is
vested are themselves guilty of a wrong against the corpora-
tion, a court of equity will interfere at the suit of a stock-
holder to protect his interest in the corporation without re-
quiring him first to request the guilty agents to proceed in the
name of the corporation against themselves."

The bill in this case alleges that "the Farmers' Loan and
Trust Company, though often requested so to do, refused to
satisfy or release said trust deed without an order of court first
had and obtained, declaring said bonds to be *ultra vires* and
void, and directing and requiring it, as trustee, to release the
same. That the said railroad company has been, through its
president, Emery C. Childs, requested to file a bill to obtain
such an order but wholly neglects and refuses so to do."  The
answer of the railroad company admits this allegation and the
decree finds that the Farmers' Loan and Trust Company had
refused, on request, to release said deed of trust without an
order of court first had, declaring said bonds to be *ultra vires*
and void, requiring the trustee to release the same, and that
the railroad company, through Childs, its president, had been
requested to file a bill to obtain such order but had wholly neg-
lected and refused so to do.  This we hold would authorize
this suit under the authorities in Morawetz on Private Corpo-
rations, *supra.*  We have also been referred to the case of
Hawes v. Oakland, 104 U. S. 450, in which the court say :
"Since the decision of this court in Dodge v. Woolsey, 18
How. 331, the principles of which have received more than
once the approval of this court, the frequency with which the
most ordinary and usual chancery remedies are sought in the
Federal courts by a single stockholder of a corporation, who
possesses the requisite citizenship, in cases where the corpora-
tion whose rights are to be enforced can not sue in this court,

City of Chicago et al. v. Cameron.

seems to justify the consideration of the grounds upon which that case was decided and of the just limitation of the exercise of this principle." * * *

"The principle involved in the case of Dodge v. Woolsey, permits the stockholder in one of these corporations to step in between that corporation and the party with whom it has been dealing, and institute and control a suit in which the rights involved are those of the corporation, and the controversy one really between that corporation, and the other party, each being entirely capable of asserting its own rights."

That principle was not changed or modified by the opinion in Hawes v. Oakland, *supra.* In the case of Dodge v. Woolsey, 18 How. 331, the court say: "It is now no longer doubted either in England or the United States, that courts of equity in both have a jurisdiction over corporations at the instance of one or more of their members, to apply preventive remedies, by injunction to restrain those who administer them from committing acts which would amount to a violation of their charters, or to prevent any misapplication of their capitals or profits, which result in lessening the dividends of the stockholders or the value of their shares, as either may be protected by the franchises of a corporation if the acts intended to be done create what is in the law denominated a breach of trust, and the jurisdiction extends to inquire into and to enjoin, as the case may require that to be done, any proceeding by individuals in whatever character they may profess to act, if the subject of complaint is the immediate violation of a corporate franchise, or the denial of a right growing out of it for which there is not an adequate remedy at law."

Pomeroy, in his Equity Jurisprudence, Vol. 3, page 13, says of the opinion in Hawes v. Oakland: "It is not claimed, however, that these specific and extraordinary allegations are demanded by the general course of English and American decisions. They are intended to guard the Federal jurisdiction from encroachment, and are prescribed by a rule of the United States Supreme Court (rule 94) for the purpose of preventing collusive attempts to bring causes within that jurisdiction."

"Rule 94: Every bill brought by one or more stockholders in a corporation against the corporation and other parties, founded on rights which may properly be asserted by the corporation, must be verified by oath, and must contain an allegation that the plaintiff was a stockholder at the time of the transaction of which he complains, or that his share has devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance. It must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the cause of his failure to obtain such action."

The reason given by the Supreme Court of the United States for the rule adopted by it in Hawes v. Oakland, *supra,* is wholly inapplicable in this court. The rule announced in Pomeroy's Equity Jurisprudence, Vol. 3, page 10, we regard as the sound rule.

"Wherever a cause of action exists primarily in behalf of the corporation against directors, officers and others, for wrongfully dealing with corporate property, or a wrongful exercise of corporate franchises, so that the remedy should regularly be obtained through a suit by and in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrong-doing directors, officers and other persons; but it is absolutely indispensable that the corporation itself should be joined as a party, usually as a co-defendant."

The rule here stated is in harmony with the rule in Morawetz on Private Corporations, *supra,* and Dodge v. Woolsey, *supra.*

In Coleman v. Eastern Counties R. Co., 10 Beavan, 1, it was said: "Ample powers are given for the purpose of main-

City of Chicago et al. v. Cameron.

taining and constructing the railway, and for doing all those things required for its proper use when made; but I apprehend that it has nowhere been stated that the railway company, as such, has power to enter into all sorts of other transactions. Indeed, it has been very properly admitted that railway companies have no right to enter into new lines of business not pointed out by their charters; but it has been contended that they have a right to pledge, without limit, the funds of the company for the encouragement of other transactions, however various and extensive, provided the object of that liability is to increase the traffic upon the railway, and thereby to increase the profits of the shareholders. There is, however, no authority for anything of that kind.    *    *    *
Do the powers to construct, maintain and regulate the traffic, and to do all that is necessary for the purpose of carrying on and working the railway, imply that the directors are to be at liberty to pledge the funds of the company for a completely different transaction, in the hope that it may turn out a profitable one, and by being itself profitable, add to the profits of the railway company? Certainly there is nothing in the powers given by this Act of Parliament which can authorize that. It has been argued that I must either allow that to be done, or that I must hold that nothing can be done that is at all out of the express words of the Act of Parliament. Now I shall remain of opinion until it has been decided otherwise, by higher authority, that this is not within the powers given by the Act of Parliament; and when another and a different case is brought before the court it will be judged of by the circumstances which attend it. And I must say that in my opinion to pledge the funds of this company for the purpose of supporting another company engaged in a hazardous speculation, is a thing which, according to the terms of this Act of Parliament, they have not a right to do."

The only difference between that case and the one at bar lies in the fact that in that case the relief sought was to prevent the fraudulent pledging of the assets, while in the case at bar the credits and securities had actually been delivered to the creditors of the other corporations with the full knowledge of this

want of consideration accruing to the railroad company. In the view we take of this case, in the light of the foregoing authorities, a bill in the nature of this bill can be maintained by a stockholder.

It is also insisted by counsel for plaintiffs in error, that the defendants in error having become stockholders after the fraudulent misappropriation of the bonds of the railroad company had occurred, had no right to bring this suit. We do not consider the objection well taken. The rule on this subject is clearly stated in Vol. 3, Pomeroy's Equity, page 10, as follows: " The stockholder does not bring such suit because his rights have been directly violated, or because the cause of action is his, or because he is entitled to the relief sought; he is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court. The stockholder, either individually or as the representative of the class, may commence the suit and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by a corporation. It is maintained directly for the benefit of the corporation, and the final relief when obtained belongs to the corporation and not to the stockholder plaintiff."

The same rule is announced in Ramsey v. Gould, 57 Barb. 398, where the court says: " It is argued by the defendants' counsel also that this suit is brought in bad faith. That inasmuch as the plaintiff made himself the holder of stock and bonds of this company for the very purpose of complaining that his rights as such were invaded, and with full knowledge that the principal acts of which he complained had been done when he made the purchase, he is to be regarded rather as a mover and promoter of strife than as a *bona fide* suitor, and that he does not come into court with clean hands, as a familiar rule of equity requires, and should therefore be dismissed. I do not see that an equity rule has any application here, that has reference to the relief of the parties in respect to the money in controversy. If there is any abuse of that relief by the plaintiff he does not come with clean hands to enforce the advantage thus obtained. Here the complainant has no inequitable advantage which he is seeking to enforce against

City of Chicago et al. v. Cameron.

the defendants. His buying the stock and bonds was not wrong done them, with whatever intent it was done. The relative rights of the parties are the same as if the suit were brought by the plaintiff's vendor. The intent with which he purchased does not change the effect of those rights, or raise any equity respecting them in favor of defendants. In regard to that his hands were clean, and the rule requires no more. His bringing the suit after having become invested with the bonds and stocks, as he did, is not bad faith, such as the courts will relieve against."

Even if the defendants in error, as stockholders, had not the legal capacity to sue, the rule is that the personal disability to sue, if apparent upon the face of the bill, must be raised by demurrer, and if it does not appear on the face of the bill, advantage must be taken of it by a plea in the nature of a plea in abatement. Mitford's Equity Pleadings, Tyler's Edition, 245 and 318; Story's Equity Pleadings, 88, 493, 494; 1 Daniell's Chancery Practice, 52, 57, 84.

There was in this case no demurrer or plea. Answer to the merits was filed. The question of the capacity to sue can not be raised after a hearing on the merits or error.

It is also insisted by counsel for plaintiffs in error, that the validity of the bonds authorized to issue and the regularity of their issue was *res adjudicata.* The case of the Chicago and Great Western Railroad Land Company v. Peck, 112 Ill. 408, is referred to as sustaining this position. That was a bill filed to foreclose the Jewett trust deed. The bill averred that the bonds were valid as against the land company and sought the foreclosure of the trust deed upon the lands of that company. No issue of any kind was raised by the pleadings or otherwise, as to the validity of the bonds against the railroad company. A question which was not raised by the pleadings, upon which no issue was tendered, in reference to which no evidence was adduced, and upon which the court did not, by its decree, pass, is not one which, under any of the authorities, can be considered *res adjudicata.* The subject-matter and cause of action involved in the case at bar was in no way involved, considered or adjudicated upon in the case in 112 Ill.

*supra.* To make a matter *res adjudicata* there must be a concurrence of the following conditions: Identity in the thing sued for, identity in the cause of action, and identity of persons and of parties. Bouvier's Law Dict. 467.

As stated by Freeman in his work on Judgments:

1st. Identity of subject-matter. 2d. Identity of cause of action. 3d. Identity of purpose or object.

"When the former adjudication is relied on as an answer or bar to the whole cause of action, or when it is claimed to be an answer to all the questions involved in the subsequent action, then it must appear that the cause of action and thing sought to be recovered are the same in both suits." Hanna et al. v. Read et al., 102 Ill. 596. There is no identity between the case in 112 Ill., *supra*, and this, as to the subject-matter, cause of action, or relief sought.

The rule announced in Whitney v. Stevens, 97 Ill. 482, and in Mail v. Maxwell, 107 Ill. 554, does not conflict with the rule announced, *supra.*

It is also insisted that there was no want of consideration shown. That it did not appear that the holders of the bonds were not *bona fide* holders for value. The decree finds that the bonds were *ultra vires* and void, and without consideration to the railroad company, and that all the parties to whom such bonds were originally issued were cognizant of all the facts constituting fraud and lack of consideration; that the bonds were *ultra vires* in being delivered for uses antagonistic to the purposes for which they were voted by the directors of the company and for which the corporation was by its charter authorized to use them. It also finds that the present holders of the bonds took them and now hold them with full knowledge of all the facts constituting fraud, want of consideration and *ultra vires.*

Under such circumstances how the claim can be made by the plaintiffs in error that no want of consideration for the bonds or that they were not *bona fide* holders for value was shown, we are not able to perceive. The finding was clear and conclusive on this subject.

It is also insisted that non-resident owners of the bonds are

not bound by this decree. Plaintiffs in error can not avail themselves of this objection. They appeared and answered, and are bound by the finding of the court against them. If the others were not served it is for them to complain. Henrickson v. Van Winkle, 21 Ill. 274. " The error would be personal to them, with which the plaintiffs in error have nothing to do." Horner v. Zimmerman, 45 Ill. 14–20.

As to whether this decree is operative on the non residents or the bonds owned by them are within the jurisdiction of this court, is not now before us, and we do not feel called upon to decide it.

It is also insisted that the decree was against the law and the evidence. The evidence is not otherwise preserved than in the findings in the decree, which findings we hold fully support the decree.

After a careful consideration of this case, we are of the opinion that there is no error of which the plaintiff in error can complain.

*Decree affirmed.*