[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 44–50; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 2, p. 1074.]

In the matter of the probate of the last will of Mary Augusta Davis.   Decree rendered.

Owens & Gray, of Brooklyn, for petitioners.

Hull, Arnold & Eberhardt, of New York City (Carrington G. Arnold, of New York City, of counsel), for contestant Ames.

Ackerly & Miles, of Northport, for contestant Davis.

KETCHAM, S.   While the law of charitable uses and their limitations has been reared into a vast structure of learning, it remains a monument of historical and academic worth rather than a guide needed for the disposition of present cases.   It is a memorial and mortuary, more a shrine for meditation than a landmark for navigation.   Upon the fabric of this erudition, statutory and judicial endeavor has wrought a modern system which, without assumption, may be declared so plain that the wayfaring man need not err therein.

Gifts for a charitable use must prevail whenever their purpose and their object (two separate elements) are both defined or can be ascertained.   As to the purpose, it is not enough that the founder has cherished or even disclosed a charitable intent.   It is not the mere benevolence of a lover of his kind which will infuse vitality to his provision.   There must be derivable from the instrument of gift a purpose "charitable" within the measure which the law has imposed upon that word.   The object—that is, the ultimate employment—must appear to be "charitable" within the same definitions, and it may so appear either by the terms of the donation, the class and need of the final recipients, or the character and fiduciary obligations of the institution or trustee selected to apply the fund. Hence the trust must be not only intended, but actually destined, for the benefit of persons by class whose needs or afflictions are such that the gift in their hands fulfills the spirit of charity, or else the gift must run to trustees or institutions whose function is inherently such that the application of the gift in charity is presumptively assured.

The words "charitable use" are a term of art.   As intimated,

supra, they are lifted from their popular and lexicographical meaning. In them survives a history from which they have derived a special significance. They condense volumes of controversy and decision into a phrase which must be now read by the growing light under which it has been developed. "In order that there may be a good trust for a charitable use, there must be some public benefit open to an indefinite and vague number, the persons to be benefited must be uncertain and indefinite, until they are selected or appointed to be the particular beneficiaries of the trust for the time being." Hinckley's Estate, 58 Cal. 457; Matter of Shattuck, 193 N. Y. 446, 452, 86 N. E. 455.

These principles need no restatement in their relation to the "religious, educational and benevolent uses" which, with "charitable uses," are made subject to the 'wholesome statutes by which they may now be effectuated, notwithstanding the indefiniteness or uncertainty of the persons designated as beneficiaries thereunder. These statutes created no new class of trusts. In their utmost effect they have enacted that if any use shall be found which, in its general purport and object, conforms to the law as it stood before these enactments, it may be given efficiency notwithstanding indefiniteness in the particular respect therein mentioned.

It is at least probable, as Mr. Surrogate Fowler has recently intimated (Matter of Cunningham, 76 Misc. Rep. 120, 136 N. Y. Supp. 922), that, whether or not named as "charitable uses," all the uses named in the statutes mentioned must conform to the charitable character if they are to receive sanction and support either under the commŏn law or from the statutes mentioned. None of them, however called, should survive, unless it be, with other attributes, invested with the mantle of charity as measured by the definitions of the law. Hence it is held that a trust for "religious, educational or eleemosynary institutions to be selected by the executor" is void, because a devise to an "educational" institution, unless named or identified by class or otherwise, might, among its other effects, reach a private and commercial beneficiary. Matter of Shattuck, supra. So, also, where the will did not contemplate a gift to an institution, but did provide that the principal or income of the fund should be disbursed by individual trustees in their discretion "to provide shelter, necessaries of life, education, general or specific, and such other financial aid as may seem to them (the trustees) fitting and proper to such persons as they shall select as being in need of the same," it was held that the gift was for a public and not a private purpose, and came within the enabling effect of the statute of 1893, now section 12 of the Personal Property Law (Consol. Laws 1909, c. 41) and section 113 of the Real Property Law (Consol. Laws 1909, c. 50), and the amendments thereto.

These statutes provide:

"No gift, grant, or bequest to religious, educational, charitable, or benevolent uses, which shall in other respects be valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder."

The will at bar gives the estate to trustees to sell the same and to distribute the proceeds, in the following words:

"Shall be distributed to any institution conducted for the benefit of the poor and suffering my Executors may in their judgment give to any individual or person who in their judgment selected as poor and in need."

In the process of interpretation, this provision divides itself into (1) the gift intended to reach the institutions; and (2) the gift designed for immediate disbursement to the poor and needy, of the trustees' selection. True, no will has a brother, but this one has two half-brothers, each akin by a separate line. The gift to the institutions seems to be controlled by the case of Manley v. Fiske, 139 App. Div. 665, 124 N. Y. Supp. 149, the provision for the poor and needy by Matter of Robinson, 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1023. The distribution to any institutions "conducted for the benefit of the poor and needy" is a valid object, unless it can be determined by affirmative interpretation that the description of institutions necessarily intends private or unincorporated bodies, incapable of receiving devises. "A construction which is fairly within the rules of law and that sustains the trust and devotes the fund included therein to purposes permitted by law and to the good of humanity should be preferred." Matter of Robinson, supra.

In Manley v. Fiske, supra, the gift considered was in words as follows:

"To * * * such American charities as they [the executors] may think well of, and I would like these sums to be given to any society that assists poor needlewomen (seamstresses) whose toil is so poorly requited."

Of this expression it was said:

"Here it must be assumed that the testator intended a valid disposition of his property. His object was to assist poor needlewomen, to benefit an indefinite class of persons. He therefore intended a public charity. It is not to be supposed that he intended the money to be paid over to unincorporated societies, and, of course, that could not be permitted. I see no difficulty in the way of upholding this provision as a trust for charitable uses; the object of it being the assistance of poor needlewomen. That purpose may be accomplished through the medium of any incorporated society having that for its object."

By identical reasoning, "institutions conducted for the benefit of the poor and needy" are discovered as incorporated societies, meant by the testator to take the gift, and, therefore, in his contemplation of a class capable of receiving the same. The section of the trust now under examination appears to be for the payment to corporations organized to benefit the poor and is therefore good.

The provision in the Robinson Case, supra, already quoted, was to provide several specific forms of relief for persons to be selected as needing the same, and the determination of its validity constrains a like finding in the present case.

The decree of probate should embody these conclusions.

Decreed accordingly.