## MICHIGAN TRUST CO. et al. v. UNITED STATES.

### No. 3796.

District Court, W. D. Michigan, S. D.

Nov. 15, 1937.

Butterfield, Keeney & Amberg, of Grand Rapids, Mich., for plaintiff.

Shelby B. Schurtz, Asst. U. S. Atty., of Grand Rapids, Mich., for the United States.

RAYMOND, District Judge.

By this suit the executors of the will of William H. Gilbert, deceased, seek to recover the sum of $5,589.39 alleged to have been illegally exacted on September 22, 1936, by the Commissioner of Internal Revenue for federal estate taxes. The sole issue is whether the one-tenth portion of decedent's residuary estate bequeathed by paragraph 7 (a) of his will is assessable under the provisions of section 303 (a) (3) of the Federal Revenue Act of 1926 (44 Stat. at Large 73, 26 U.S.C.A. § 412 (d) and note).

A brief summary of the facts will suffice. William H. Gilbert, a resident of Grand Rapids, Michigan, died October 23, 1933. By his will his residuary estate was placed in trust for the benefit of his wife and sister, with the provision that after the death of the survivor of them, the principal should be divided into ten equal parts to be disposed of by the trustees for various religious, charitable, and educational uses.

The introductory portions of paragraph 7 and subdivision (a) thereof read:

"Seventh. At the death of the survivor of my said wife, Mary Silver Gilbert, and my said sister, Alice H. Gilbert, I direct that the principal of the trust fund mentioned in the preceding paragraph Sixth of this will (or such part thereof as then remains), together with all increase or accumulations thereof then on hand, be divided by my Trus-

tees into ten (10) equal parts, and I direct that the same go and be disposed of as follows:

"(a) I direct that one of said ten (10) equal parts go and be disposed of for such corporate charity or corporate benevolence or public purpose as my wife, Mary Silver Gilbert, may, by her last will and testament, appoint; and, in default of such appointment, that the same go and be disposed of as provided in the succeeding sub-paragraphs of this paragraph Seventh of my will, and in such proportions as are specified in said sub-paragraphs for those portions of my residuary trust estate which are disposed of therein."

The issue arises under that portion of section 303 (a) (3) of the Federal Revenue Act of 1926 which provides that in determination of the value of the net estate there shall be deducted from the value of the gross estate "the amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual," etc., and involves interpretation of that portion of the will herein quoted.

Defendant contends that by the provisions of paragraph 7 (a) of the will Mrs. Gilbert was authorized to dispose of one-tenth "for such corporate charity or corporate benevolence or public purpose" as she might, by her last will and testament, appoint, and argues because the words "corporate charity" and "corporate benevolence" are therein used disjunctively, that in order to give meaning to the words "corporate benevolence" the power granted must be construed to include the optional right on the part of decedent's widow to dispose of that portion of the estate for private benefactions as distinguished from public or charitable uses. The precise issue presented is whether the words "corporate benevolence" may fairly be construed under the provisions of the will to include gifts for private or individual use, or whether they are to be construed as authorizing only charitable bequests.

It is recognized that the word "benevolent" may in some circumstances include within its meaning private benefactions. The same may also be said of the word "charitable" though doubtless in a more restricted scope. When used in a will, such words must be interpreted, as frequently expressed, "from the four corners of the instrument." The meaning of such words is to be ascertained by consideration of the environment in which they are placed. As stated by Chief Justice Holmes: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 245 U.S. 418, 425, 38 S. Ct. 158, 159, 63 L.Ed. 372, L.R.A.1918D, 254. The instant case clearly calls for application of the maxim, "Noscitur a sociis." Careful examination of the entire will, and particularly of those trust provisions having to do with the residuary estate, affords little basis for interpretation of paragraph 7 (a) as authority for exercise for private benevolent uses of the power thereby granted. In event of its not being exercised, that portion of the estate must under clear provisions of the will go for charitable or public uses. None of the other fractional parts of the residuary estate is bequeathed for private uses. Obviously had the intention been to include private benefits among the powers granted, this divergent purpose in a carefully prepared will would have been indicated by language directed toward such disposition.

Similar issues were presented in the case of St. Louis Union Trust Co. v. Burnet (C.C.A.8) 59 F.2d 922, 926, 928:

" 'Though every charitable purpose is benevolent, not every benevolent purpose is charitable.' For this reason it is held that the devise to trustees of a fund to be devoted 'to such benevolent purposes as, in their opinion will constitute a fitting testimonial or memorial for me, and in some degree, extend my usefulness and helpfulness to others,' is not exclusively for charitable purposes. It is no doubt true that, as used in some connections, the word 'benevolent' has been held to include private benefactions beyond the accepted scope of public charity. Uniformly, however, this has not been permitted wholly to defeat the gift where the charitable intent appears on the face of the will. Jackson v. Phillips et al., 14 Allen (Mass.) 539,

556. It is in this case that we find the definition of a legal charity given by Mr. Justice Gray, than which the Board of Tax Appeals knows none 'more accurate, concise and comprehensive,' to wit:

" 'A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.'

"Continuing, the learned justice says: 'If the words of a charitable bequest are ambiguous or contradictory, they are to be so construed as to support the charity, if possible. It is an established maxim of interpretation, that the court is bound to carry the will into effect, if it can see a general intention consistent with the rules of law, even if the particular mode or manner pointed out by the testator is illegal.'

"By the same distinguished jurist we find this statement in Saltonstall et al. v. Sanders et al., 11 Allen (Mass.) 446, loc. cit. 468: 'The word "benevolent," without the addition of any synonymous or explanatory words, has been often, if not uniformly, used in the statutes of the Commonwealth, as equivalent to "charitable." '

"He continues thus (loc. cit. pages 454, 456 of 11 Allen [Mass.]): 'This bequest is to receive such an interpretation, if possible, as will carry out the intention of the testator. A charitable gift, above all others, is to be so construed ut res magis valeat quam pereat. As Lord Chancellor Chelmsford said, in the most recent case in the house of lords upon the construction of general charitable bequests, "If there are two meanings of a word, one of which will effectuate and the other will defeat the testator's object, the court is bound to select that meaning of the word which will carry out the intention and objects of the testator." Whicker v. Hume, 7 H.L.Cas. 154.' * * *

"We think it may confidently be stated that the word 'benevolent,' when used in connection with gifts for a general beneficial public purpose, to promote the public good, either by bringing minds or hearts under the influence of education or religion, by relieving human bodies from disease, suffering or constraint, by assisting others to establish themselves in life, or by any other means conducive to general happiness and well-being, connotes charity, and should be so construed. The words 'usefulness' and 'helpfulness' are far-reaching and comprehensive. It has been said that the word 'benevolent' has a dual meaning, depending upon whether it is used in conjunction with 'charity' or 'charitable,' or is 'in other ways limited by the context'; or whether it has been expanded to include purely private benefactions, beyond the accepted scope of public charity. Upon this phase of the question the language of Mr. Justice Gray in Saltonstall v. Sanders, supra, is particularly in point:

" 'If there are two meanings to a word, one of which will effectuate and the other defeat the testator's object, the court will select the former. Whicker v. Hume, 7 H.L.Cas. 154. "Benevolence," in its popular sense and use, is synonymous with charity. These terms are used interchangeably in common speech, in the books, and in the statutes. (The counsel referred to some of the statutes cited in the opinion.) The testator intended to provide for the relief of the poor. He used the word "benevolence" in its popular sense, meaning well doing, and not well wishing; just as he used "temperance" in its popular sense, and not as meaning moderation or forbearance. The question to be decided is, what this testator meant by the word "benevolence;" not what the word means etymologically, or as used in any other connection whatever.' * * *

"It was undoubtedly the intention of the testator that this bequest should be devoted to charitable uses. It occurs in that section of his will dealing exclusively with gifts of the same general nature. It was devised to trustees with authority to select the beneficiaries from the general class described. Every individual in the community might be, directly or indirectly, the recipient of it. The testator desired that the execution of this trust should take such form as to constitute a fitting testimonial or memorial for himself. This would necessarily exclude the conception of a private benefaction beyond the scope of a public charity."

Application of these principles to the will here under consideration supports the conclusion that there was no intention on the part of the testator to include private benefactions within the powers conferred by paragraph 7 (a) of the will.

Defendant urges that the following cases support the argument that the word "benevolence" must be construed to include private benefactions as distinguished from public purposes. German Corporation of Negaunee v. Negaunee German Aid Society, 172 Mich. 650, 138 N.W. 343; People v. Powers, 147 N.Y. 104, 41 N.E. 432, 35 L.R.A. 502; In re Shattuck's Will, 193 N.Y. 446, 86 N.E. 455; In re Cunningham's Will, 76 Misc. 120, 136 N.Y.S. 922. Consideration of these cases in the light of the later case of Chicago Bank of Commerce v. McPherson (C.C.A.6) 62 F.2d 393, brings the conclusion that they are not authority for the interpretation urged by defendant.

Judgment will be entered in favor of the plaintiff in the sum of $5,589.39 with interest from September 22, 1936.