PERE MARQUETTE RAILROAD CO. *v.* GRAHAM.

1. EVIDENCE—MORTGAGE FORECLOSURE—APPEAL.

An objection that a master's deed on foreclosure should not have been admitted in evidence without the files and records cannot be raised for the first time on appeal.

2. SAME—RECITALS IN DEED—TITLE.

Where defendant introduced in evidence a deed to himself containing a recital that plaintiff's grantor owned the premises in dispute, the recital constituted some evidence of title in plaintiff.

3. RAILROAD MORTGAGES—AFTER-ACQUIRED PROPERTY.

A mortgage by a railroad company may be made to cover after-acquired real estate.

4. SAME—DESCRIPTION OF PREMISES.

A railroad mortgage which covers its roadbed and all lands and depot grounds, whether in possession or to be afterwards acquired, and a master's deed on foreclosure in the same language, without a more specific description, will convey title, as against a stranger, to a parcel of land adjacent to the main line of the railroad, and adapted to use in its business, acquired by the company after the execution of the mortgage.

5. CORPORATIONS—OWNERSHIP OF REAL ESTATE—CONSTITUTIONAL LIMITATION.

> The provision of the State Constitution that a corporation shall not hold real estate for a longer period than 10 years, unless such real estate shall be actually occupied by the corporation in the exercise of its franchises, can be enforced only at the instance of the public.

6. RAILROAD MORTGAGES — FORECLOSURE — DELAY IN OCCUPYING LAND—INTENT OF MORTGAGE. .

> The fact that a railroad company delays for 10 years to take possession of land claimed under the foreclosure of a mortgage describing the property conveyed in general terms only is not conclusive evidence that the land was not intended to be covered by the mortgage.

Error to Berrien; Coolidge, J. Submitted February 25, 1904. (Docket No. 108.) Decided April 26, 1904.

Ejectment by the Pere Marquette Railroad Company against Edmond A. Graham and others. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Reversed.

*Frederick W. Stevens* (*Victor M. Gore,* of counsel), for appellant.

*M. L. Howell* and *Lawrence C. Fyfe,* for appellees.

MONTGOMERY, J. This is an action of ejectment to recover the south two-thirds of lot 451 of the city of St. Joseph, "being the premises now occupied by the Riverside House, so called," which premises are situated at the southerly end of plaintiff's railroad bridge across the St. Joseph river, and contiguous to its main-line track. At the conclusion of plaintiff's case the circuit judge directed a verdict for defendants, and plaintiff brings error.

There was a conflict in the testimony upon two points, the first being whether the property in question was really a part of the south two-thirds of lot 451, and the other whether defendants had acquired title by adverse possession. The record distinctly states that these two ques-

tions were open questions under the testimony, and, in so far as the defendants' brief attempts to treat them otherwise, we are not warranted in adopting their conclusions.

The plaintiff derived its title through a mortgage given by the Chicago & Michigan Lake Shore Railroad Company to James F. Joy and Henry P. Baldwin, as trustees, a master's deed given under foreclosure thereof, and by *mesne* conveyances from the purchasers under the foreclosure. The circuit judge directed the verdict on grounds stated as follows:

"In this case I have thought it over carefully, and I simply decide this case on one point, and that is, the master's deed, under the circumstances, did not pass title to this specific property, the Riverside Hotel. Now, in this case it appears that defendant Graham got a deed of this Riverside Hotel, and that he has occupied it for 14 years and over. Now, the mortgage given by the railroad company does not describe any specific property, and the master's deed does not describe any specific property, and my opinion is that, not having described any specific property, and not having taken possession or done any act within 10 years after the making of the mortgage or the making of the master's deed, the plaintiff has no title to this land."

Defendants now contend that plaintiff failed to show a valid foreclosure, for the reason that the files and records of the proceedings in chancery were not introduced, nor was the order confirming the sale introduced. The objection to the introduction of the master's deed did not disclose a purpose to raise any such question, nor does it appear that the circuit judge considered this question, or that the point was in any other manner made below. If it be urged, however, that the plaintiff was bound to show title before it could ask the judgment of the court in its favor, it may be answered that the defendant Graham introduced a deed to himself containing the following recital, having reference to the lot in question, among others:

"The south two-thirds of said above-named lots being owned by Chicago & West Michigan Railway Company,

which owns all in excess of 200 feet in depth, and which owns also the right of said railway company to use the track and maintain the same through a portion of said lots to the docks and along docks as now used and operated, without rent or charge."

As plaintiff showed a chain of title from the Chicago & West Michigan Railway Company, this recital, taken in connection with the conveyance to the plaintiff, constitutes some evidence of title in it. While such recitals between a party to the record and a stranger work no estoppel, they are some evidence of the facts recited. 24 Am. & Eng. Enc. Law (2d Ed.), p. 61; *Merrifield* v. *Parritt*, 11 Cush. 590, 598.

The plaintiff's case, then, was not wholly barren of evidence of title, and the defendants are not in position to insist that the questions upon which the case was determined below are not open for consideration here. Apart from the question of the regularity of the foreclosure proceedings, which need not be considered, it is only necessary to state that the mortgage given by the railroad company undertook to mortgage its property then owned and to be thereafter acquired, in language following:

" All the following present *and in the future to be acquired* property of said railroad company, and all the right, title, interest, and equity of redemption therein; that is to say: All the railroad of the said party of the first part, located and constructed *and to be located and constructed*, extending from the point at New Buffalo where the Chicago & Michigan Lake Shore Railroad intersects the Michigan Central Railroad, to Manistee, in the county of Manistee and State of Michigan, and including the *termini* of said road and the land occupied thereby, and also including the right of way for said railroad, the roadbed, superstructure, iron, ties, supplies, chairs, bolts, nuts, splices, *all lands and depot grounds*, station houses and depots, viaducts, bridges, timbers, materials, and property, *purchased or to be purchased*, for the construction or equipment of said railroad; all engines, tenders, cars, machinery, and all kinds of rolling stock, whether now owned *or to be purchased* by said party of the first part in the future; and all franchises, rights, and privileges of said

party of the first part, *and all property acquired by virtue of and under authority thereof, now in possession or hereafter to be acquired,* including all machine shops, tools, implements, and personal property used therein or upon or along the line of said railroad, or at its stations, or any of them, wherever situated; and including *all the appurtenances and appendages of said railroad and the property of said company,* and all the net revenues, income, and profits of the said party of the first part which may have been or shall hereafter be derived from said railroad and property."

It appears that the land in question had been conveyed to the mortgaging railroad company some two years prior to foreclosure, and the deed given by the master on foreclosure described the following property:

"All and singular the railroad of the Chicago & Michigan Lake Shore Railroad, which extends from the point at New Buffalo, county of Berrien and State of Michigan, where the Chicago & Michigan Lake Shore Railroad intersects with the Michigan Central Railroad, to Montague, in the county of Muskegon, and thence by way of Pentwater, in the county of Oceana, to Manistee, in the county of Manistee and State of Michigan. [Here follows a like description of the branches.] Including all the *termini* of said railroad and branches, and all the present and future to be acquired property of the said railroad company, and all its right, title, and interest and equity of redemption therein, and all of the said railroad, and all of the land occupied by the same, and including the right of way for said railroad, the roadbed, superstructure, iron, ties, supplies, chairs, bolts, nuts, splices, all lands and depot grounds, station houses and depots, viaducts, timbers, materials, and property, purchased or to be purchased, for the construction or equipment of said railroad; all engines, tenders, cars, and machinery, and all kinds of rolling stock, whether now owned or to be purchased by said railroad company for use on said roads; and all the franchises, rights, and privileges of said railroad company, and all property acquired by virtue and authority thereof, now in possession or hereafter to be acquired, including all machine shops, tools, implements, and personal property used therein or upon or along the line of said railroad, or at its stations, or any of them, wherever situated;

and including all the appurtenances and appendages of
said railroad and the property of said company, and all
the net revenues, income, and profits of, the said railroad
company which may have been or shall be derived from
said railroad and property connected therewith; together
with all and singular the rights, titles, members, privileges,
hereditaments, and appurtenances to the same belonging
or in anywise appertaining.    To have and to hold," etc.

It is well settled that after-acquired property may be
made the subject of a railroad mortgage.    It is very com-
mon in practice, and such mortgages have been uni-
versally sustained.  *Galveston Railroad* v. *Cowdrey,* 11
Wall. 459; *Thompson* v. *Railroad Co.,* 132 U. S. 68 (10
Sup. Ct. 29).    Defendants' counsel contend that the clauses
above quoted are not broad enough to cover this property
in question.    We do not see how the language could have
been much more clear than that employed in this instru-
ment.    We do not overlook the analysis of language made
in the brief of counsel for defendants, but we think too
narrow a construction is placed upon some of the language
employed.    That the purpose of this broad language was
to include all the after-acquired property which the rail-
road company should see fit to acquire, having any re-
lation to the business of the corporation, is, we think, per-
fectly manifest.    That this property, being adjacent to
the main line of the company, was adapted to use in its
business, is, we think, also manifest.

It is contended that the decree and the master's deed
should have more specifically described the property.
The master's deed follows with sufficient accuracy the
terms of the mortgage.    It does not appear that any ques-
tion arises under the recording laws, or that any one has
been misled by the general description employed.    The
question would appear to be whether, as between the mort-
gaging railroad company and the purchasers, the title to
this property passed.    We are unable to state what ap-
pears of record in the foreclosure proceedings.    It is not
made to appear that the railroad company objected to the

method of foreclosure, or to the form of the decree. Nor does it appear that it raises the question as to whether the mortgage covered the property here in controversy. It would be a wide stretch to say that this decree, if one was made conforming to the recitals in the master's deed, is absolutely void, and should be so held in a collateral attack by a stranger to the proceeding.

The land in question being apparently conveyed by this mortgage and master's deed, we fail to see the significance of the 10-years delay. As before stated, the question as to whether the statute of limitations had run was a question of fact upon the evidence. Delay to bring suit for a less period than the statute of limitations would not defeat the plaintiff's title. If the question be deemed an open one as to whether this land was adapted to use by the railroad company in connection with its road, there was enough in the record to justify the submission of that question to the jury, even if the delay to take possession of it for 10 years should be deemed evidence bearing upon the question.

It is true there is a constitutional provision of this State that a corporation shall not hold real estate for a longer period than 10 years, except such real estate as shall be actually occupied by such corporation in the exercise of its franchises. Const. art. 15, § 12. But it is well settled that this constitutional provision does not give the right to a mere squatter upon real estate to assert the lapse of title against the corporation, but that this provision can be enforced only at the instance of the public. 5 Thomp. Corp. § 5795, and cases cited. The circuit judge appears not to have rested his determination upon this ground, but, as we infer, treated the failure of the railroad company to take possession of the land within 10 years as conclusive evidence that there was no intention to use it for construction or equipment, and concluded from this that it was not within the terms of the mortgage. This conclusion, we think, is faulty, in that it makes the subsequent course pursued by the railroad company determine the question

of what was intended by the mortgage itself, and this conclusively.

The judgment will be reversed, and a new trial ordered.

MOORE, C. J., and CARPENTER, J., concurred. GRANT and HOOKER, JJ., took no part in the decision.