GERMAN CORPORATION *v.* NEGAUNEE GERMAN AID SOCIETY.

1. CORPORATIONS—BENEVOLENT AND CHARITABLE PURPOSES—DEED.
   A transfer by a corporation organized for benevolent and charitable purposes under §§ 8258-8263, 3 Comp. Laws, 4 How. Stat. (2d Ed.) § 8998 *et seq.*, of mineral rights devised to the association unconditionally by the will of a deceased member, is valid only if the consideration is adequate and to be devoted to benevolent purposes, or if the disposition of property is made directly for charitable purposes: its assets cannot be diverted from such objects by a sale of property worth $500 to the members of the corporation for the consideration of one dollar.

2. SAME—CHARITIES—WORDS AND PHRASES—BENEVOLENT.
   The words "benevolent and worthy purposes and objects," as used in said statute, mean more than a charitable object, or generosity, or liberality; they refer to acts tending to relieve misfortune or distress, and do not warrant the conveyance of its property by the society to its members.

3. SAME—STATUTES.
   Corporations organized in pursuance of such provisions of

statute are not organized for profit within the meaning of the act, whatever may be the intent or purpose of the individual members.

4. SAME—DEEDS—PARTIES.

A deed to all the members and officers from the corporation was invalid for want of parties to the contract in which the same persons were interested on both sides, and also for the inadequacy of the consideration.

5. SAME.

Upon the entrance of new members into the corporation, it was entitled to object to the diversion of its funds, and to recover its property from a new corporation to which the original members conveyed the mineral rights.

6. SAME—STOCKHOLDERS—EQUITY.

The finance committee of the grantor, having charge of the entire management of the corporation and its assets, and having a majority of new members, not participants in the transaction, rightly defended the property of the corporation by opposing the suit and conveyance, in the corporate name, although a majority of the members favored it and all the old members participated in the transaction.

7. SAME—SETTING ASIDE CONVEYANCES.

Any new member of the corporation was entitled to defend against the conveyance, by cross-bill, in a suit brought by the grantee to confirm its title.

8. SAME.

Corporate powers should only be exercised to accomplish the objects for which the corporation was called into existence, and even a majority should not control those powers to pervert or destroy the original purposes of the corporators.

9. SAME—OFFICERS.

The officers had no right to attempt to represent the corporation in any transaction in which they were personally interested in obtaining an advantage at the expense of the company.

10. SAME—FRAUD.

The deed operated as a fraud on the society and was a gross abuse of the trust.

11. SAME—EQUITY—INADEQUACY OF CONSIDERATION

While inadequacy of consideration may not be a distinct ground of relief in equity, it is evidence of fraud that would warrant the interposition of the court, especially when it is so great as to shock the moral sense.

12. SAME—CONSTITUTIONAL LAW—FRANCHISE.
    The constitutional provision limiting the right of a corporation
      to hold real estate to ten years unless occupying the property
      in the exercise of its franchise (sec. 5, art. 12), can only be
      enforced at the instance of the State.

Appeal from Marquette; Flannigan, J. Submitted
October 15, 1912. (Docket No. 68.) Decided November
8, 1912.

Bill by the German Corporation of Negaunee, Michigan,
against the Negaunee German Aid Society and others for
the reformation of a deed and to quiet title to certain min-
eral rights. Defendants filed a cross-bill, praying for
cancellation of said deed of conveyance. From a decree
granting defendants the relief asked, complainant appeals.
Affirmed.

*C. F. Button*, for complainant.

*W. T. Potter*, for defendants.

STONE, J. This case is here on appeal by the complain-
ant from a decree dismissing the bill of complaint, and
granting the relief prayed for in the answer and cross-bill
of the defendant, the Negaunee German Aid Society.

The opinion of the learned circuit judge who heard the
case so fully states the facts, and so clearly discusses the
questions of law involved, that we insert it here, and
adopt it as our own:

"The complainant is a corporation organized under the
laws of Michigan for mining purposes. The defendant
the Negaunee German Aid Society is a corporation or-
ganized under sections 8258–8263, 3 Comp. Laws (4 How.
Stat. [2d Ed.] § 8998 *et seq.*). It was organized Janu-
ary 10, 1887, for the purposes and objects authorized by
the statute, viz., to provide for the relief of distressed
members, the visitation of the sick, the burial of the
dead, and such other benevolent and worthy purposes
and objects as affect the members of the corporation.
The other defendants are members of the Aid Society.

"One Charles L. Werner, who died May 23, 1894, was, at the time of his death, a member in good standing of the Aid Society. He left a will devising and bequeathing unconditionally all his property, real and personal, to the Aid Society. The will in due time was admitted to probate, and under it the Aid Society became the owner in fee of the lands described in the bill of complaint. Subsequently the Aid Society sold and conveyed the surface of these lands, reserving to itself, its successors and assigns forever, all ores and mineral therein, with the usual rights of exploration and mining. On the 8th day of May, 1906, the total membership of the Aid Society was 39. On that day, pursuant to resolutions passed by themselves, and in form authorizing the transaction, the mineral rights of the Werner lands were deeded by the Aid Society to its members share and share alike. The consideration expressed in the deed was the sum of $1, which was paid. The complainant was organized July 14, 1909, and on August 19th of that year the Werner mineral rights were conveyed to it by deed in due form executed and acknowledged by the Aid Society's grantees of such rights. It is claimed the testimony does not disclose the identity of the incorporators of the complainant, or the names of the stockholders at the time of the filing of its bill, but the impression received by the court, from the witnesses and on the arguments, was that the members of the Aid Society, who received the deed of the Werner mineral rights, and the organizers and stockholders of the complainant, are identical. However, that may be, it is true the complainant does not deny knowledge before, and at the time of the execution of the deed to it, of all the facts and circumstances surrounding the deeding of the mineral rights to the Aid Society members. About seven months after the conveyance by the society to its old members, a new member was admitted, and from time to time subsequently other new members to the number of 19 or 20 were taken in. Some of the new members knew of the situation of affairs relating to the Werner mineral rights before they sought admission to the society, while others knew nothing concerning the mineral rights transaction until after admission. None of the new members claim they were induced to join the society by reason of the supposed ownership by it of the Werner mineral rights.

"Shortly after the new members became affiliated with

the society, they publicly denied a valid transfer of the mineral rights to the old members, and made such representations in that regard that third parties refused to deal with the complainant as the owner thereof. The complainant filed its bill against the society and the new members to quiet its title. The new members answered, disclaiming any ownership of the minerals in themselves, as individuals or members of the society, but insisting that the title to the minerals did not pass to the old members or the complainant, and remains in the society. The society also appeared and answered, denying the validity of the conveyances to the old members and the complainant, and asserting title in itself. The defendants, claiming for their answer the benefit of a cross-bill, prayed for a decree canceling the deeds to the old members and the complainant, and quieting the title in the society. The consideration expressed in the deed is the sum of $1. The actual payment of the dollar is disputed. Relative to its payment, the testimony is in some confusion, but, on the whole, we conclude it was in fact paid. The Aid Society was endowed by the law of its organization with full power to purchase, take, receive, hold and enjoy real estate and personal property, and to give, grant, sell, mortgage, lease, devise, and dispose of the same at its will and. pleasure; but in the same section it is provided that the proceeds arising from all estate and investments of the society shall, after payment of all running expenses, be devoted exclusively to the benevolent purposes and objects of the corporation.

"The act under which the society organized is entitled 'An act to provide for the incorporation of benevolent societies.' Its purposes and objects are limited by the act to benevolent purposes and objects, and, while it may sell its real estate and other property at its will and pleasure, yet the proceeds must be devoted exclusively to benevolent purposes and objects. It would seem, therefore, that the powers of the society in regard to the disposition of property are limited to a disposition directly for a benevolent purpose, or for an adequate consideration to be devoted exclusively to benevolent purposes. Unless the consideration for the transfer of its property is the accomplishment of a benevolent purpose, the consideration must be money or money's worth fairly proportionate to the value of the property conveyed, otherwise the provisions of the statute,

which permit a conveyance of property on condition that the proceeds are devoted to benevolent objects, is defeated.

"If the sole consideration for the deed in question here was the sum of $1, then that the consideration paid for the conveyance of the mineral rights was inadequate is not open to question. The rights conveyed, according to the testimony, were worth at least $500. This brings us to the question whether the object of the conveyance to the old members was a benevolent one. We are in accord with counsel for complainant that 'benevolent purpose or object' is not interchangeable with 'charitable purpose or object.' 'Benevolent' is a word of much broader significance than 'charity,' and includes what are in no sense charities. It rather signifies an act dictated by kindness, good will, or a disposition to do good. The act is characterized by the good and kindly intention of the donor, rather than by the condition of the recipient, and in its broader sense it may be said to mean liberality and generosity, and in that sense might be applied to a straight gift of property by the society to its members. But the word has come to be used with different meanings, according to circumstances, and, where its meaning is important in the determination of a question, the courts invariably search the circumstances of its use to ascertain the meaning intended. The word benevolent, of itself, without anything in the context qualifying or restricting its meaning, will be taken in its broader sense, otherwise, if it is apparent, from the surroundings, it was used in a stricter or narrower sense. 1 Words and Phrases, 753–756, and cases cited.

"To ascertain the meaning which the legislature gave the word, we may not stop upon recourse to a dictionary, but must go to the statute where the word is found, and determine from the context whether its meaning is narrowed down. 'To provide for the relief of distressed members, the visitation of the sick, the burial of the dead, and such other benevolent and worthy purposes and objects as affect the members of the corporation,' is the language of the statute, and that the word 'benevolent' as there used was intended by the legislature to denote acts tending to the relief of misfortune, if not actual distress, must be clear. As there used, it means a benefit conferred on a member in need. The recipient may or may not be an object of charity, but, if not an object of charity, he must be the mark of ill fortune. It was not intended by

the legislature to class a gift by the society, whereby a rich member is made richer, a benevolent act. It must be held, therefore, that the sole consideration for the deed to the old members was the sum of $1, and that the same was inadequate.

"There is no justification in the statutes for the position taken for the complainant on the arguments and in the briefs, that the society is a business corporation for profit. The act provides solely for the incorporation of benevolent societies. As has been seen, the word 'benevolent,' even in its broader sense, signifies the conferring of benefits as distinguished from the distribution of profits, and that the act limits the objects of societies formed under it to the conferring of benefits, and excludes all objects of a profit-sharing nature, is too plain to require argument. Whether the members of the society regarded it as a profit-sharing corporation is of no moment. The law, and not the will of the members, fixes the status of the corporation.

"The Aid Society was not really a party to the deed of the mineral rights. Every officer and member of the society was interested on the other side. The officers and members represented themselves. The corporation of which they were officers and members was not represented in the transaction. The officers and members dictated the terms of the sale, directed the execution of the deed, executed it themselves, and delivered it to themselves. The deed, therefore, was not, either in law or fact, executed or delivered by the society to its officers and members, but by its officers and members to themselves. The deed to the old members must be held void, because made upon inadequate consideration by and for the benefit of those in control of the corporation, and also for want of the necessary element of two parties to the contract. *Miner* v. *Ice Co.*, 93 Mich. 97 [53 N. W. 218, 17 L. R. A. 412]; *People* v. *Township Board*, 11 Mich. 222; *Flint, etc., R. Co.* v. *Dewey*, 14 Mich. 477.

"The complainant, having taken the deed to itself with knowledge of the particulars of the transaction between the society and its old members, stands in no better position. The deed to the old members being void, their deed to the complainant was ineffectual to pass title. The complainant took nothing by its deed. The position taken by complainant that, inasmuch as all of the officers and members of the society, at the date of the transaction,

were parties to it, neither the corporation nor the new members will be admitted to complain, is unsound. Clark & Marshall on Private Corporations, p. 2297, and cases collected in note 565.

"A corporation is a legal entity and artificial person distinct from its stockholders or members as individuals, and that it may, by a proper action, in the proper court, recover property owned by it, which is unlawfully withheld by its officers and members in control of its affairs, is entirely clear, and the fact that all of its members happened to be in opposition does not alter the case. In such a situation a corporation may sometimes be unable to get into court, but being in, it may demand of all of its members, as well as of a part, the restitution of property unlawfully appropriated. The complainant has insisted throughout that the Aid Society concedes the conveyance of the mineral rights to the old members to be valid and binding upon it, and, further, that the answer of the society was put in without its sanction, and consequently that any defense presented in the name or on behalf of the society should not be considered by the court. The by-laws of the society provide for the election of a finance committee, to consist of three trustees, who are clothed with ' the management of the entire property of the society, and shall be responsible for the same.' It happened that at the time of the filing of complainant's bill, the finance committee, or, at least, a majority thereof, was made up of new members who discredited the conveyance of the mineral rights, and that committee employed a solicitor and gave instructions for the defense on the part of the society. It is true that a majority of the members of the society, counting the grantees of the mineral rights, were opposed to a defense on the part of the society. Under the by-laws, and in view of the special circumstances of this case, the finance committee had the right to defend in the name and on behalf of the society and to make all necessary provisions to that end.

" Furthermore, the nature of this case is such that the defense of the society could be presented, and the case made by the cross-bill prosecuted by any new member of the society. *Miner* v. *Ice Co.* [93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412]; *Torrey* v. *Cement Co.*, 150 Mich. 86 [113 N. W. 580]; *Edwards* v. *Investment Co.*, 132 Mich. 1 [92 N. W. 491]. A decree is ordered dismissing

the complainant's bill of complaint, canceling the deed from the society to the old members, and from the old members to the complainant, and quieting the title of the society to the mineral rights in controversy, as prayed in the cross-bill.

"In taking from the society the deed of the mineral rights, the old members did not contemplate a fraud on the society. On the contrary, it appears quite conclusively they acted in the best of good faith throughout, fully and honestly believing they had a right, inasmuch as they included the entire membership of the society, to conclude the transaction which was made. Under these circumstances, costs will not be awarded to either party."

But little need be added. It is very evident that the property in question was willed to the defendant, the Negaunee German Aid Society, to be used for the purposes and objects for which such society was formed. Those objects and purposes are distinctly stated in the statute.

Corporate powers should only be exercised to accomplish the objects for which they were called into existence, and even a majority should not control those powers to pervert or destroy the original purposes of the corporators.

The officers of the corporation had no right to represent the corporation in any transaction in which they were personally interested in obtaining an advantage at the expense of the company they represented. *Ten Eyck* v. *Railroad Co.*, 74 Mich. 226–232 (41 N. W. 905, 3 L. R. A. 378, 16 Am. St. Rep. 633); 1 Morawetz on Private Corporations, § 517. To permit the officers and members of the Aid Society (even in its corporate name) to deed to themselves the mineral interest in question, under the circumstances here shown, would be to pervert and destroy the purposes of the society. The statute provides that—

"The proceeds arising from said estates and investments shall, after the payment of all running expenses, be devoted exclusively to the benevolent purposes and objects of the corporation."

Such deed operated as a fraud upon the society, and was a gross abuse of the trust. *Sparrow* v. *E. Bement & Sons,* 142 Mich. 441–453 (105. N. W. 881, 10 L. R. A. [N. S.] 725). Complainant's counsel quotes the following from the constitution of said society:

"For profit making the best for the society is to accumulate real estate so that the necessary capital can then be withdrawn from the society treasury, when three-fourths of its members vote so to do."

If this provision means what counsel claims for it, it is in conflict with the statute authorizing the organization of the society. The consideration expressed in this deed to the 39 members was $1. A fair conclusion from the evidence is that it cost the society $10 to make its deed. The undisputed evidence shows that the property was worth at least $500, and probably much more. Counsel urges that mere inadequacy of price is not ground for setting aside a sale, either in law or equity, and cites 6 Am. & Eng. Enc. Law (2d Ed.), p. 696 *et seq.* On page 699 is the following:

"But though inadequacy of consideration is not itself a distinct ground of defense at law nor of relief in equity, yet it is evidence of fraud which is both; and while, as evidence, it is ordinarily entitled to very little weight when standing alone, yet when it is coupled with other circumstances showing overreaching or oppression, or when the parties stand in such relation that this will be presumed, inadequacy becomes a material element of constructive fraud."

It is also well settled that, where the inadequacy is so great or gross as to shock the moral sense, it is a suspicion or evidence of fraud. It should be borne in mind that there was here no dissolution of the corporation, as was the case in *Hopkins* v. *Crossley,* 138 Mich. 561–565 (101 N. W. 822, 823). It was there said:

"Had not the corporation been dissolved, we cannot doubt that it could recover the fund, and devote it to its own purposes, as provided in section 6 of its own organic act."

We are not prepared to say that under the circumstances of this case the defendant Aid Society could not have maintained an original bill to set aside the conveyance. Having been brought into equity as a defendant, it certainly was entitled to the benefit of its cross-bill.

Complainant's counsel raises the constitutional question that the defendant corporation could not hold real estate for more than 10 years except when actually occupied by it in the exercise of its corporate franchises. It is a sufficient answer to say that this constitutional provision can only be enforced at the instance of the public. *Pere Marquette R. Co.* v. *Graham*, 136 Mich. 444–450 (99 N. W. 408).

The decree of the circuit court is affirmed, with costs of this court to the defendant the Negaunee·German Aid Society.

Moore, C. J., and Steere, McAlvay, Brooke, Kuhn, Ostrander, and Bird, JJ., concurred.