Trustees of Onalaska Camp No. 418, Modern Wood-
men of America, Respondents, vs. Onalaska
Modern Woodmen Hall Association and others,
Appellants.

*January 9—February 6, 1923.*

*Corporations: Benevolent societies: Fraternal benefit societies:
Conveyance of property: Separate corporations with identical
members: Transactions between the two corporations.*

1. The fact that the members of a fraternal benefit society were
   identical with the stockholders of an association incorporated
   to hold title to the society's real estate did not prevent the
   corporations from in good faith dealing with each other.
2. It is very doubtful whether a subordinate branch of the Mod-
   ern Woodmen of America, organized under ch. 92 of the
   Statutes, is a benevolent society, as said chapter does not
   undertake to give character to the corporations thereby estab-
   lished, the character depending on the purposes for which the
   corporation is organized.
3. Where a local lodge of a fraternal benefit society organized
   a corporation to which it conveyed title to its building, dis-
   tributing the shares of stock among the lodge members, and
   thereafter recognized the title of the corporation by paying
   annual rental, such corporation took an indefeasible title to
   the building.

Appeal from a judgment of the circuit court for La
Crosse county: E. C. Higbee, Circuit Judge. *Reversed.*

On the 16th day of January, 1901, *Onalaska Camp No.
418, Modern Woodmen of America,* entered into a contract
for the purchase of certain village lots, with a building sit-
uated thereon suitable for use as a meeting hall for said
camp. Thereafter the camp went into possession of the
property, made payments as required by the contract, and on
the 17th day of November, 1908, the purchase price having
been fully paid, the vendors conveyed the property to John
W. Dalton and Augusta Dalton, his wife, and Henry Cronk,
in trust for said camp.

For some time prior to and after said 17th day of No-

vember, 1908, a controversy existed between the head camp and many of the subordinate camps of said organization over the question of insurance rates. Considerable ill feeling existed and many of the local camps were in open rebellion against the proposed raise of rates. The plaintiff camp and many others were fearful that their property might be taken away and confiscated by the head camp. As early as February 2, 1907, the question of how to save the property in question from confiscation by the head camp was a subject of discussion at the meetings of plaintiff camp. These discussions continued at successive meetings throughout the year. It was finally decided in open meeting of the camp that the members of the plaintiff camp should organize a separate corporation to take over the title to the property in question. Such a corporation was formed under the name of *Onalaska Modern Woodmen Hall Association,* the defendant herein.

On November 7, 1908, such proceedings as were necessary to transfer the Modern Woodmen hall to the defendant *Onalaska Modern Woodmen Hall Association* was authorized by a resolution of the camp. The minutes of the meeting of the plaintiff camp under date of November 21, 1908, record: "Neighbor Dalton reported that the camp had settled with Pertzsch and Ristow (vendors) and that the hall property had been transferred to the *Onalaska Modern Woodmen Hall Association.*"

At all times from the organization of defendant corporation down to January 18, 1913, the members of *Onalaska Modern Woodmen Camp No. 418* and the stockholders of the defendant were identically the same persons, except in so far as the plaintiff might be considered a stockholder. At no time did any individual or any member of the plaintiff camp, or said camp, ever subscribe or pay for any stock in said defendant *Onalaska Modern Woodmen Hall Association.* Said stock was issued *pro rata* among the members

of said camp, as follows: The value of the real estate was assumed to be $3,200. The defendant corporation was organized with $6,000 capital stock divided into 1,200 shares of $5 each. Two hundred shares were given to the plaintiff camp and the balance of the stock was given to the then members of the plaintiff camp who appear on the defendant's records as stockholders of the defendant corporation; each one to have at least one share and as many more shares as the length of time he had been a member since the purchase of the property by the plaintiff bore to the amount of stock to be issued. It was figured that the length of time that a person had been a member of the camp would be the proportion of the dues and assessments that he had paid into the general fund that went into the purchase of the real estate aforesaid.

During the years 1911-1912 another controversy arose concerning another raise in rates which was vigorously opposed by the plaintiff camp. The members declared that the proposed raise would drive them out of the order. On January 18, 1913, the directors of the defendant association tendered the plaintiff camp $77.50 for the stock held by the camp in the defendant association, and on January 20, 1912, it was unanimously voted to transfer the stock owned by the camp to the defendant association, said stock to be divided among the individual stockholders in proportion to the amount of stock held by each one respectively. The stock was so divided.

Up to the time of the transfer of the stock held by the camp to the defendant association, some of the principal officers of the camp were also principal officers of the association. Since the transfer of said stock the plaintiff has paid the defendant a stipulated rent of $50 per year. Prior to that time it paid as rent the dividend on the 200 shares of stock. At a stockholders' meeting of the defendant association held on February 18, 1921, a motion was made

and carried that the present board of directors be instructed
to sell Woodmen hall. At a meeting of the directors of the
defendant held on the 19th day of February, 1921, a com-
mittee was appointed to get legal advice as to the manner
of proceeding to sell the hall now owned by the *Modern
Woodmen Hall Association* and report at the next meeting.

This action was brought by the plaintiff to restrain the
defendant from selling the property, claiming that the said
building and premises is the property of the plaintiff, and
that the defendant is only a trustee and holds said property
in trust for said plaintiff. The lower court adjudged that
the plaintiff is the owner of the property, ordered the de-
fendant to convey it to the plaintiff, and enjoined the de-
fendant, its agents, servants, and attorneys from in any
manner interfering with or from selling or incumbering
said property. From such judgment the defendant appeals.

For the appellants there was a brief by *Otto Schlabach*
and *Geo. W. Bunge,* both of La Crosse, and oral argument
by *Mr. Bunge.*

For the respondents there was a brief by *Mahoney &
Schubert* of La Crosse, and oral argument by *Paul W.
Mahoney.*

OWEN, J. In disposing of this case the trial judge relied
on *German Corporation v. Negaunee German Aid Society,*
172 Mich. 650, 138 N. W. 343, or at least upon the princi-
ples which ruled the decision. In that case the defendant
Negaunee German Aid Society was a corporation organ-
ized to provide for the relief of distressed members, the
visitation of the sick, the burial of the dead, and for such
other benevolent and worthy objects as affected the mem-
bers of the corporation. One Charles L. Werner was a
member of the aid society. He died leaving a will devising
and bequeathing all his property to the society. Subse-
quently the aid society sold and conveyed the surface of

certain lands so devised, reserving to itself, its successors and assigns forever, all ores and minerals therein, with the usual rights of exploration and mining. Thereafter, pursuant to resolutions passed by themselves, and in form authorizing the transaction, the mineral rights of the Werner lands were deeded by the aid society to its members, share and share alike, for an expressed consideration of one dollar. These grantees then conveyed the mineral rights to a corporation organized for mining purposes. After-acquired members of the society denied the validity of this transaction and embarrassed the mining company in dealing with the property so conveyed. The mining company brought action to quiet title. It was held that the aid society was a benevolent corporation and that it held the devise in trust for benevolent purposes and that the disposition made in conveying the property to its own members was not a disposition for benevolent purposes. The transaction was therefore set aside.

It is very doubtful if the plaintiff camp can be said to be a benevolent corporation. It is a subordinate branch of the head camp of the Modern Woodmen of America, organized principally for the conduct of a mutual insurance business, and is by our statute (sec. 1956) termed "a fraternal benefit society." It is said that the local camp is a benevolent corporation because it is organized under ch. 92 of the Statutes. That chapter simply provides that certain lodges, such as Free Masons, Odd Fellows, etc., may elect trustees and that the trustees shall be a body corporate, and that all property conveyed by devise, gift, grant, purchase, or otherwise to any such society shall vest in such trustees and their successors in office. Ch. 92 does not undertake to give character to the corporations thereby established. It simply authorizes the organizations therein described to constitute themselves a body corporate in the manner stated. The character of each organization depends upon the purposes

for which it is organized. The statute does no more than give to such an organization a legal status which enables it to hold and convey property in a definite and orderly manner.

The dominant purpose of the Modern Woodmen of America is to furnish insurance to its members. The so-called lodge system is part of its plan. The local or subordinate branches are called camps. According to the regulations of the society the camps must hold meetings. In order to do this they must have a meeting place. The meeting place may be either rented or purchased. In the instant case the local camp purchased a building for such purpose. The title to the building was conveyed not to the camp nor to the trustees of the camp, but to three individuals, one of whom, being a lady, presumably was not a member of the camp, in trust for the camp. It is rather apparent that the camp did not want to take the legal title to the property owing to its altercation with the head camp over the raising of rates. Almost immediately after the conveyance of the property to these three persons in trust for the camp, the camp authorized said persons as its trustees to convey the property to a corporation the organization of which it had itself planned and consummated. This conveyance was made without a dissenting vote or a protest from any member of the camp. Each and every member of the camp either expressly consented to or acquiesced in the conveyance. Each and every member of the camp accepted shares of stock in the defendant corporation commensurate with the amount which he had contributed through his assessment to the purchase of the property. Every person having the remotest interest in or title to the property was a party to the transaction. There was no donor whose bounty was diverted, no creditor to suffer, by this transaction. It appears by stipulation of the parties that the head camp had no interest in the property. We can conceive

of no person having any interest in the subject matter which clothed him with any right to challenge the transaction. The situation is not at all comparable to that involved in *German Corporation v. Negaunee German Aid Society,* 172 Mich. 650, 138 N. W. 343, relied upon by the trial court. In that case the property of the donor, which he had contributed for benevolent purposes, was diverted from such purposes and appropriated by the individual members of the society.

Objection is made because the stockholders of the *Modern Woodmen Hall Association* were identical with the members of the plaintiff camp and that the principal officers of the two organizations were for the most part identical. This, however, presents no insuperable obstacle to the transaction. These circumstances do not prevent the corporations from dealing with each other. 14 Corp. Jur. 873; *Bergenthal v. Boynton A. C. Co., ante,* p. 42, 190 N. W. 901; 2 Fletcher, Corporations, § 913. Although such dealings are subject to careful scrutiny by the courts where the rights of minority stockholders or others are affected, we can see nothing illegal about this transaction, and we hold that the defendant *Modern Woodmen Hall Association* acquired an indefeasible title in the premises. The only interest thereafter retained in the property by the plaintiff camp was the 200 shares of stock which long before the commencement of this action it surrendered to the defendant association for a valuable consideration, since which time it has recognized the title of the defendant by paying it an annual rental of $50 for the use of the building. Upon no aspect of the case can we discover any interest of the plaintiff camp in the property which authorizes it to maintain this action or to interfere in any manner with any disposition which the defendant may see fit to make thereof.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.