**MULLINS v. DE SOTO SECURITIES CO.,
Inc., et al. (HARDEE et al., Interveners).**

No. 257.

District Court, W. D. Louisiana,
Shreveport Division.

April 27, 1944.

See, also, 3 F.R.D. 271.

Eugene A. Nabors, of New Orleans, La.,
and Pyburn & Pyburn, of Shreveport, La.,
for plaintiff and interveners.

Clyde R. Brown, of Monroe, La., and L.
E. Colvin, of Mansfield, La., for defendants.

PORTERIE, District Judge.

The same three parties apply for leave
to intervene at this time who were denied
the same request previously. See Mullins
v. De Soto Securities Company, Inc., et al.
(Hardee et al., Interveners), D.C., 2 F.R.
D. 502. A full and proper appreciation of
what is before us can only be had by a
reading of this case as it has run the course
of the courts, to-wit: (a) Mullins v. De
Soto Securities Co., Inc., et al., D.C., 45 F.
Supp. 871; (b) Mullins et al. v. De Soto
Securities Co., Inc., et al., 5 Cir., 136 F.2d
55, 56; (c) Mullins v. De Soto Securities
Co., Inc., et al. (Hardee et al., Interveners),
supra; and (d) the present petition of the
interveners.

The main factual difference, and it is a
very important difference in the admission
of a pleading of this character, is that interveners are now seeking to come into the
case when issue has not been joined;
when they were denied their intervention
previously, issue had been joined, since a
motion to dismiss by the defendants had
been sustained and a rehearing thereon denied.

Our denial of the previous intervention
of these same three parties was approved
by the Circuit Court. 136 F.2d at page
56. Our dismissal of the case against the
Federal Deposit Insurance Corporation
was also sustained.

As to the original plaintiff's appeal, we
quote in full what was said by the Circuit
Court:

"What, and all, that was before the district judge on the motion to dismiss was
the case as plaintiff's petition had alleged
it. These allegations, except as to the
Federal Deposit Insurance Corporation, individually, alleged a case which if proven
would have entitled the plaintiff to some relief. For assuming that the district judge
was right in his holding that ownership of

the stock at the time the matters complained of occurred is an essential to the maintenance of plaintiff's suit, it cannot be said from an inspection of plaintiff's petition as amended that plaintiff was not the owner of the stock at the time when at least some of the matters complained of occurred. Without, therefore, undertaking to determine whether, as appellees claimed and the district judge held, the rule set out in Rule 23(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, applies to a suit brought in the state and removed to the federal court, or whether, as claimed by appellees, it does not, the judgment will be affirmed as to Federal Deposit Insurance Corporation, individually, and reversed as to all other appellees, and the cause remanded for further and not inconsistent proceedings."

The three parties now seeking to become interveners present (among others) these facts: one is the owner of forty-two shares of the preferred stock of the De Soto Securities Company since December 22, 1931; the other of three shares since January 10, 1931, and of three shares since September 10, 1931; and the third is the present owner of fifty shares since July 1, 1929. This latter period of ownership would cover any and all of the items of complaint contained in the original petition. The original plaintiff in the suit is the owner of shares only since August 27, 1935. Many of the items of complaint are previous in occurrence to this last date.

The motion to intervene is accompanied by a copy of the proposed petition of the interveners. They make no new allegations to, but subtract some from, those of the original plaintiff. Consequently, no additional, nor any new phases of the same, cause of action is presented.

The question as to whether or not permission should be granted for this intervention, or that the intervention is a matter of right, is therefore, mainly, if not solely, dependent upon whether or not we were correct in "holding that ownership of the stock at the time the matter complained of is an essential to the maintenance of plaintiff's suit."

Now let us analyze our decision when we previously denied the intervention of plaintiffs, and see just how the new situation is to affect our ruling.

In the proper exercise of our discretion, since now the case stands without issue joined, we must say that the application to intervene is now timely. Federal Rules of Civil Procedure, rule 24, 28 U.S. C.A. following section 723c.

As to the other questions to be decided under Rule 24(a and b), we have to bring out that we have held before in this case that the provisions of Rule 23(b) apply to a suit brought in the state and removed to the federal court. The original plaintiff and the present applicants for intervention claim it does not and that the state rule (with a different provision) applies. We have already said, however, in 45 F.Supp. 871, at page 878, that "the Louisiana rule is clearly the same as the federal rule found in 23(b) of the Rules of Civil Procedure." We are of the same opinion still. However, we must remember that we are fallible.

We now conclude that (1) to avoid a multiplicity of suits (the present applicants, if denied, may each enter a separate suit); that (2) because the evidence of the numerous transactions occurring before August 27, 1935, may not be allowed when offered by the original plaintiff and may be allowed when offered by the three parties seeking to become plaintiffs, if not earlier in occurrence than their respective dates of acquisition of stock; that (3) because we might not be supported in our ruling as a matter of law that the original plaintiff could not prove the harm of transactions before August 27, 1935, the date of acquisition by her of her stock, it would be quite possible and more promotive of justice to permit the intervention of the three applicants. It would be the more logical since this is a derivative action, meaning that the success by the plaintiffs (original or intervening) is to be shared by all the stockholders of the corporation including the four plaintiffs.

What we said in the following paragraph taken from our previous opinion at 2 F.R. D. 506 now loses much of its force and applicability (a) because of the changed status in the pleadings (formerly issue having been joined and the case decided by the motion to dismiss, and presently issue not having been joined); and (b) because of this different view of the law as just above reasoned:

"After this study of intervention in this particular type or class action, we are impressed with the controlling and influencing effect of the personal status of the

stockholder, for after all in this opinion we are saying that one particular owner of preferred stock has no cause of action at all and the other owner of preferred stock has or might have a cause of action; we are saying that the plea of res judicata would not hold against the separate action of the latter, to follow the adjudged issue of the former—and all of this is because of the time of acquisition of the stock by the respective owners. This is so because of Rule 23(b), with its several equitable requirements."

There is a strong school of thought, and it may become the dominant one, recognizing that the date of acquisition of the plaintiff's share is a matter of no importance to a representative action. See Ballantine on Corporations, 1927, pp. 124–626; Jablow v. Agnew, D.C., 30 F.Supp. 718; Hand v. Kansas City Southern R. Co., D.C. S.D.N.Y., 55 F.2d 712.

The reasoning of this new theory is strongly given in Morawetz, Private Corporations, vol. 1, 2d Ed., Sec. 265:

"It has been pointed out that the estate of a corporation is to be treated as that of a continuing institution, irrespective of the members at any particular time composing it. Each share represents an interest in the entire concern, and the several holders are entitled to equal rights, irrespective of the time when they acquired their shares. Causes of action belonging to the corporation increase the value of the corporate estate, and must be treated like any other assets; when enforced, they inure to the benefit of all the shareholders without distinction. It is plain therefore, that a shareholder has an interest in all causes of action belonging to the corporation, whether they arose before or after he purchased his shares."

And in Section 266 the author continues:

"There seems to be no good reason why a shareholder should not, as a rule, be permitted to sue on account of causes of action which arose before he purchased his shares, it being assumed, of course, that the corporation ought to sue, but is unable to act. If purchasers were disqualified from protecting their interests under these circumstances, the transferable value of shares might be impaired, and the loss would fall upon the innocent holders who were wronged."

Further reasoning is found in 21 Harvard Law Review 195 (1907):

"It is difficult to suggest any sound theory whereby a stockholder suing in behalf of the corporation, and whose litigation if successful redounds to the benefit of all stockholders, should have an arbitrary limitation placed upon his right to sue. Corporate stock entitles the owner to share in all of the corporate assets, among which must be counted causes of action belonging to the corporation, and one of the most characteristic benefits of corporate organization is the continuing estate thereby created. The stockholder has no right to any specific part of the corporate assets; his rights are those ordinarily possessed by the holder of a chose in action, which in the end are litigious rights. Again, the transferable value of shares is impaired if once it be understood that a transfer operates to cut off rights which the transferor would have had, and wrongs are imposed on purchasers who only on becoming shareholders can inspect the books of the company or otherwise, as matter of right, examine into corporate transactions. This is an answer, also, to the suggestion that a person purchasing stock should take the corporate situation as he finds it: why should he do so when he buys in ignorance of wrong done, and why should wrongdoers be given a shield against attempts to right the wrongs?"

The following cases show a variety of liberal and not too technical application of the procedure under Rule 23(b) of the right of a stockholder, when free of collusion to establish jurisdiction, to sue in a derivative action: Pollitz v. Gould, 1911, 202 N.Y. 11, 94 N.E. 1088, 38 L.R.A.,N.S., 988, Ann.Cas.1912D, 1098; Earl v. Lofquist, 135 Cal.App. 373, 27 P.2d 416; Montgomery Light Co. v. Lahey, 121 Ala. 131, 25 So. 1006; Just v. Idaho Canal & Improvement Co., 16 Idaho 639, 102 P. 381, 133 Am.St.Rep. 140; City of Chicago v. Cameron, 22 Ill.App. 91; Mason v. Carrothers, 105 Me. 392, 74 A. 1030; German Corp. of Negaunee v. Negaunee German Aid Soc., 172 Mich. 650, 138 N.W. 343; Forrester v. Boston, etc., Cons. Cooper, etc., Min. Co., 21 Mont. 544, 565, 55 P. 229, 353; Winsor v. Bailey, 55 N.H. 218.

This reasoning might well receive practical support by a ready illustration drawn from this very case. Let us say that each one of the four plaintiffs herein had a separate suit, and each was held to the proof of transactions subsequent to his acquisition of stock, since there could not be dupli-

cations of damages for the injury caused by the same transaction, the four suits would, of necessity, be, in effect, merged as if tried all together. Would not the four judgments, duplications of damages for the same injury subtracted, have to be added together and this sum be distributed equally to all the stockholders?

We realize that in our opinion previously denying the intervention (2 F.R.D. 502, at page 504), we said that on December 6, 1940, parties now intervening were on notice of the original suit by plaintiff, but had delayed to intervene until in July of 1942. For the several reasons given above, and particularly because the trial of the original suit would not be delayed by. permitting the intervention since no answer has been filed by the defendants, we consider the application now timely. Original plaintiff in her case is not now delayed by the intervention.

We believe that a joint trial of all the issues involved, with qualified and classified admission of the evidence as to the various parties, will permit of a final judgment which will be representative of the legal rights of all the parties.

We believe that pleas of prescription which might affect one or some and not others of the plaintiffs, may be well received, and legally and justly applied.

The necessity of demand by the applicants for intervention to the officers of the corporation is an unnecessary requirement to impose on the applicants in the face of the full demand by the original plaintiff and the unqualified refusal of this demand for redress by the officers of the corporation.

Moreover, and finally, there are two serious points of law in this case, decision of which on appeal, if there be one, might direct the making of one case with any and all stockholders of the corporation, who might desire to become parties to the suit, as plaintiffs, irrespective of the time of acquisition of stock. The Circuit Court specifically avoided ruling on these two points (see quotation, supra). We may not advance our view as being all-controlling and leave out of the case parties who, and evidence that, might be permitted by the Circuit Court.

Our present procedure will dispatch the case. If on appeal it be remanded in whole or in part, there will be no necessity of taking evidence again below to apply the law ordered by the circuit court.

Judgment allowing the motion to intervene of the three applicants and overruling the opposition by the defendants to the application of the interveners will be signed upon presentation.